

NUMBER 13-06-00381-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**ROBERTO PEREZ, JR.,**                                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                              **Appellee.**

## On appeal from the 148th District Court
## of Nueces County, Texas.

## MEMORANDUM OPINION

**Before Justices Rodriguez, Garza, and Benavides**
**Memorandum Opinion by Justice Garza**

Appellant, Roberto Perez, Jr., was charged by indictment with the offense of driving

while intoxicated ("DWI"). *See* TEX. PENAL CODE ANN. § 49.04(a) (Vernon 2003). As noted

in the indictment, this was appellant's third DWI offense.[1] *See id.* § 49.09(b)(2) (Vernon

---

[1] The indictment also stated that appellant had previously been convicted of burglary of a habitation, a second-degree felony, on May 18, 1990. *See* TEX. PENAL CODE ANN. § 30.02(a), (c)(2) (Vernon 2003). Moreover, appellant admitted, in one of his many pro se filings, that he was convicted of manslaughter on July 12, 2003.

Supp. 2008) (providing that an offense under section 49.04 of the penal code is a third-degree felony if it is shown at trial that the defendant had previously been convicted of two other DWI offenses). A jury convicted appellant of felony DWI[2] and sentenced him to seventeen years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice ("TDCJ") with no fine. *See id.* § 12.33(a) (Vernon 2003);[3] § 12.42(a)(3) (Vernon Supp. 2008). On appeal, appellant argues that: (1) the trial court erred in denying his motion to dismiss due to an alleged violation of his right to a speedy trial; and (2) his trial attorney provided ineffective assistance of counsel. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 24, 2003, a Nueces County grand jury charged appellant by indictment with the offense of DWI, which allegedly occurred on February 27, 2003. The indictment provided that appellant had previously been convicted of two other instances of DWI on January 4, 1991 and April 10, 2000. Appellant was re-indicted on May 1, 2003, as a repeat felony offender.

On August 11, 2003, the trial court appointed attorney Epimenio Ysassi to represent appellant at trial. Ysassi, on August 14, 2003, filed a waiver of arraignment on behalf of appellant. In this filing, appellant entered a plea of "not guilty" and waived his right to the August 22, 2003 date set for his arraignment. Trial was set for January 12, 2004.[4]

---

[2] Section 12.42(a)(3) of the penal code states that "if it is shown on the trial of . . . a third-degree felony that the defendant has been once before convicted of a felony, on conviction the defendant shall be punished for a second-degree felony." *Id.* § 12.42(a)(3) (Vernon Supp. 2008). Because he was convicted of a third-degree felony and he had been previously convicted of felony burglary of a habitation, appellant was sentenced in accordance with the sentencing range for second-degree felonies. *See id.*

[3] Section 12.33(a) of the penal code provides that "[a]n individual adjudged guilty of a felony of the second degree shall be punished by imprisonment in the institutional division for any term of not more than 20 years or less than 2 years." *Id.* § 12.33(a) (Vernon 2003).

[4] For reasons not entirely clear in the record before us, the trial was later reset for August 17, 2005.

On March 19, 2004, appellant filed a pro se application for appointment of new counsel, alleging that Ysassi, among other things: (1) failed to communicate with him regarding the preparation of his defense; (2) refused to give him up-to-date information regarding the status of his case and upcoming hearings; (3) violated his right to a speedy trial; and (4) refused to meet with his close acquaintance, Herminia Villarreal, regarding his case. Furthermore, the record contains several handwritten letters addressed to the trial court in which appellant repeatedly referenced his "right to a speedy trial." On December 10, 2004, the trial court conducted a status hearing in appellant's case. At this time, Ysassi appeared on appellant's behalf and communicated to the trial court that appellant no longer desired that Ysassi represent him. The trial court granted Ysassi's motion to withdraw at this time.

On April 27, 2005, appellant, now represented by Eric Perkins, filed several motions, including a motion for speedy trial. In this motion, appellant asserted that he would be prejudiced if the trial was not held on or before June 27, 2005, because "the passage of time has made it difficult to locate potential witnesses and for those witnesses to recall with any clarity the events that led to defendant's arrest." Appellant also filed a motion to set aside the indictment because he was allegedly denied his constitutional right to a speedy trial. Appellant argued that: (1) there were no satisfactory reasons for the delay in bringing him to trial; (2) he never waived his right to a speedy trial; and (3) he has been substantially prejudiced because "he has suffered oppressive pretrial incarceration and substantial anxiety and concern."

On May 4, 2005, appellant filed a pro se motion to dismiss the felony DWI indictment for violating his right to a speedy trial. In his motion, appellant alleged that: (1) Ysassi ignored all of his phone calls and letters and refused to meet with Villarreal; (2) he

3

first asserted his right to a speedy trial in his application for the appointment of new counsel; (3) he demanded a trial on several occasions; (4) the State "withheld trial for 28 months"; (5) he was falsely accused of murder and the State's refusal to proceed to trial amounts to "bad faith" prosecution; and (6) "this delay has inflicted a great amount of anxiety, [sic] and concern, a[nd] a great deal of prejudice has been inflicted . . . ."

On August 15, 2005, the State filed its first motion for continuance, seeking a delay of the August 17, 2005 trial setting because one of its witnesses, Corpus Christi Police Department Officer Billy Gaines, a member of the Army Reserve, was mobilized for active duty in Iraq. On August 17, 2005, the trial court conducted a hearing on the State's motion for continuance. The State, arguing in support of the motion for continuance, stated that Gaines's testimony was material to the case because he was the arresting officer with respect to appellant's felony DWI offense. Conversely, appellant argued that he had filed a number of pro se motions asserting his entitlement to a speedy trial and that the State was persisting in the prosecution of this offense out of vindictiveness, considering he was already serving a life sentence for another conviction.[5] The hearing concluded when appellant's counsel orally moved for a psychiatric evaluation of appellant, which the trial court granted.[6] With the respect to the State's motion for continuance, the trial court stated that the granting of appellant's motion for psychiatric evaluation "render[ed] the trial setting on Monday [August 17, 2005] moot." The case was then set for trial on December 5,

---

[5] It is noteworthy that appellant admitted on the witness stand that prior to Perkins, six other attorneys had represented him in this matter and his trial for murder.

[6] Appellant filed a written motion for examination regarding insanity on October 21, 2005.

4

2005.[7]

On November 2, 2005, the trial court conducted a hearing on appellant's motion to dismiss the felony DWI indictment for violating his right to a speedy trial. At the hearing, appellant abandoned his request for a psychiatric evaluation and re-asserted the arguments contained in his original motion to dismiss. The trial court denied appellant's motion.

Subsequently, the State filed a second motion for continuance on December 1, 2005. In this motion, the State again asserted that Gaines was unavailable to testify given that he was still serving in Iraq. The State noted that Gaines was expected to complete his military service at the end of January 2006. The trial court presumably granted the State's second motion for continuance, considering the State filed a third motion for continuance on March 2, 2006, noting that the case had been set for trial on February 21, 2006, but that Gaines was still unavailable to testify.

Finally, on May 15, 2006, the trial court commenced appellant's jury trial. After both sides presented evidence, the jury found appellant guilty and sentenced him to seventeen years' incarceration in the TDCJ with no fine.[8] This appeal ensued.

## II. APPELLANT'S MOTION FOR SPEEDY TRIAL

By his first issue, appellant contends that the trial court erred in denying his motion to dismiss for violating his right to a speedy trial. Specifically, appellant argues that the trial court should have dismissed the indictment in this matter because a weighing of the *Barker*

---

[7] On appeal, appellant notes that the trial court's criminal docket sheet reflects that the case was called on October 10, 2005, but that "the State was not ready for trial . . . because the prosecutor 'was out-family emergency." However, the docket sheet also states that appellant had "not yet [been] evaluated by [a] Dr."

[8] Gaines was present at the May 15, 2006 trial, and he was the sole testifying witness.

factors supports a conclusion that his right to a speedy trial was violated. *See Barker v. Wingo*, 407 U.S. 514, 530 (1972). The State counters by arguing that since three of the four *Barker* factors do not weigh in appellant's favor, the trial court properly concluded that appellant's right to a speedy trial was not violated.

## A. Standard of Review

When reviewing a trial court's decision on a speedy trial claim, an appellate court applies a bifurcated standard of review. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); *State v. Jones*, 168 S.W.3d 339, 345 (Tex. App.–Dallas 2005, pet. ref'd). We review legal issues de novo but give deference to a trial court's resolution of factual issues. *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005); *Munoz*, 991 S.W.2d at 821; *Jones*, 168 S.W.3d at 345. We review a speedy trial claim in light of the arguments, information, and evidence that was available to the trial court at the time it ruled. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003); *Jones*, 168 S.W.3d at 345. Under this standard of review, deference must be given not only to a trial court's resolution of disputed facts, but also to the drawing of reasonable inferences from the facts. *Kelly*, 163 S.W.3d at 726.

We must uphold the trial court's ruling if it is supported by the record and is correct under the applicable law. *Shaw*, 117 S.W.3d at 889; *Munoz*, 991 S.W.2d at 821; *Jones*, 168 S.W.3d at 345. If a violation of the defendant's right to a speedy trial is established, the only possible remedy is dismissal of the prosecution. *Strunk v. United States*, 412 U.S. 434, 440 (1973); *Dragoo*, 96 S.W.3d at 313; *Jones*, 168 S.W.3d at 346.

## B. Discussion

The Sixth Amendment to the United States Constitution provides, in relevant part,

that "in all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amend. VI; *Barker*, 407 U.S. at 515. This right was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. XIV; *see Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967).

The Texas Constitution likewise provides that "in all criminal prosecutions the accused shall have a speedy . . . trial." TEX. CONST. art. 1, § 10. The Texas Court of Criminal Appeals has traditionally analyzed state constitutional claims of the denial of a speedy trial under the factors established in *Barker*. *See Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).

The primary burden is on the prosecution and the courts to ensure that defendants are speedily brought to trial. *See Chapman v. Evans*, 744 S.W.2d 133, 136-37 (Tex. Crim. App. 1988) (orig. proceeding) (citing *Turner v. State*, 504 S.W.2d 843, 845 (Tex. Crim. App. 1974); *McKinney v. State*, 491 S.W.2d 404, 407 (Tex. Crim. App. 1973)). In determining whether one has been denied his federal or state right to a speedy trial, a court must use a balancing test to weigh the conduct of both the State and the defendant. *See Shaw*, 117 S.W.3d at 888 (citing *Barker*, 407 U.S. at 530). The relevant factors to be weighed include, but are not necessarily limited to: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his speedy trial right; and (4) any prejudice to the defendant resulting from the delay. *Id.* at 888-89. We turn now to our de novo review and independent weighing and balancing of the relevant *Barker* factors.

**1. Length of Delay**

The length of delay is a triggering mechanism for analysis of the other three *Barker* factors. *Barker*, 407 U.S. at 530-33; *Munoz*, 991 S.W.2d at 821. Unless the delay is

7

presumptively prejudicial, we need not inquire into the other *Barker* factors. *Munoz*, 991 S.W.2d at 821. Generally, a delay of eight months or longer is considered "presumptively prejudicial" and triggers speedy trial analysis. *State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App.–San Antonio 1998, no pet.). However, the length of delay that will invoke such an inquiry depends upon the circumstances of each case. *Zamorano*, 84 S.W.3d at 648-49.

The Supreme Court has noted that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531; *Zamorano*, 84 S.W.3d at 649. If the accused demonstrates the time from accusation to trial "has crossed the threshold dividing 'ordinary' from 'presumptively prejudicial' delay, a court must then consider the extent to which that delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Zamorano*, 84 S.W.3d at 649. Therefore, a "speedy trial analysis depends first upon whether the delay is more than 'ordinary'; if so, the longer the delay beyond that which is ordinary, the more prejudicial that delay is to the defendant." *Id.* The length of delay for speedy trial purposes is measured from the time the defendant is arrested or formally accused. *United States v. Marion*, 404 U.S. 307, 313 (1971).

Here, appellant was arrested on February 27, 2003, and his jury trial did not commence until May 15, 2006. Therefore, more than three years elapsed from the time appellant was arrested to the time the actual trial began. This delay is sufficient to trigger further analysis. *See Marion*, 404 U.S. at 313; *Zamorano*, 84 S.W.3d at 649; *Rangel*, 980 S.W.2d at 843.

**2. Reasons for the Delay**

The State bears the burden of justifying the delay. *Rangel*, 980 S.W.2d at 843. Courts assign different weights to different reasons for a delay. *Dragoo*, 96 S.W.3d at 314.

8

A deliberate attempt to delay a trial is weighed heavily against the State, while more neutral reasons, such as negligence or overcrowded dockets, are weighed less heavily. *Zamorano*, 84 S.W.3d at 649. When the record is silent regarding the reasons for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense, nor a valid reason for the delay. *Dragoo*, 96 S.W.3d at 314. A valid reason, however, justifies appropriate delay. *Id.*

Appellant argues that the State deliberately tried to delay his trial. Specifically, appellant asserts that the State delayed trial in this matter to await the resolution of appellant's murder trial. Appellant further asserts that the United States and Texas Constitutions do not permit the State to wait for Gaines to return from deployment in Iraq before proceeding to trial on appellant's offense.

In analyzing this prong of the *Barker* test, we must consider the conduct of both the State and appellant. *See Burgett v. State*, 865 S.W.2d 594, 597 (Tex. App.–Fort Worth 1993, pet. ref'd) ("Delay caused by acts of the accused which are beyond the control of the prosecution should not weigh against the State. In fact, a defendant may be disentitled to the speedy trial safeguard when he has or shares responsibility.") (citing *Dickey v. Florida*, 398 U.S. 30, 48 (1970); *United States v. Smith*, 534 F.2d 74, 75-76 (5th Cir. 1976)). However, we must keep in mind the excessiveness of the delay because the presumption that pretrial delay has prejudiced the accused intensifies over time. *See Doggett v. United States*, 505 U.S. 647, 652 (1992).

As previously noted, appellant was arrested on February 27, 2003, indicted on April 24, 2003, and re-indicted on May 1, 2003. Appellant was appointed counsel on August 11, 2003, and later filed a motion for appointment of new counsel and his motion for speedy trial. The trial court conducted a hearing on appellant's motion for speedy trial on August

9

17, 2005. However, this hearing concluded when the trial court granted appellant's request for psychiatric evaluation. The State filed three motions for continuance, one of which was rendered moot by the trial court's granting of appellant's request for psychiatric evaluation. In its motions to continue appellant's trial, the State sought to delay appellant's trial in order to procure the presence of a material witness—Gaines, the arresting officer, who was deployed in Iraq for over two years.

Based on our review of the record, it is clear that appellant's actions in requesting the appointment of new counsel and his request for psychiatric evaluation contributed to the delay. *See Grayless v. State*, 567 S.W.2d 216, 220 (Tex. Crim. App. 1978) ("Delays encountered in bringing a defendant to trial who claims to be incompetent or who is temporarily incompetent ordinarily do not infringe on the right to a speedy trial."); *see also Holmes v. State*, 938 S.W.2d 488, 491 (Tex. App.–Texarkana 1996, no pet.) (holding that delays caused by, among other things, the appointment of new counsel "are not chargeable against the State"). Furthermore, on appeal, appellant has not cited anything in the record demonstrating that the State deliberately delayed appellant's trial in attempt to prejudice his defense. The State's sole specified reason for filing its motions to continue trial was to procure the presence of a material witness, which courts have held is an appropriate justification for delaying a trial. *See Barker*, 407 U.S. at 531 ("Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."); *Grayless*, 567 S.W.2d at 220 ("The absence or illness of a principal witness will justify an appropriate delay."); *see also Kelley v. Commonwealth*, 17 Va. App. 540, 545-46, 439 S.E.2d 616, 619 (Va. Ct. App. 1994) (concluding that "the Commonwealth was justified in requesting a continuance for the period in which Trooper Bacote, their primary witness, was called to military duty in the Persian Gulf"). And, even if the State delayed appellant's trial to await

the resolution of his concurrent murder trial, as appellant alleges, the Texas Court of Criminal Appeals has held "[t]hat appellant was being prosecuted on other charges constitutes a valid reason for the delay in bringing him to trial." *Easley v. State*, 564 S.W.2d 742, 745 (Tex. Crim. App. 1978). Therefore, based on the foregoing, we conclude that this factor weighs in favor of the State.

### 3. Appellant's Assertion of His Right to a Speedy Trial

A defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant was being deprived of the right. *Barker*, 407 U.S. at 531-32. A defendant has some responsibility to assert his right to a speedy trial, and his failure to do so strongly indicates that he did not really want a speedy trial. *See Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992). The manner in which a defendant raises a speedy-trial complaint is also significant.

The record contains numerous handwritten pro se letters from appellant to the trial court, to his appointed counsel, and to the State making passing references to his constitutional right to a speedy trial. Appellant's first pro se letter addressing a speedy trial was dated March 18, 2004, and stated the following: "I'm requesting a [sic] new counsel. One of my Texas Constitional [sic] rights is a right to a speedy trial and an [sic] effective assistance of counsel."[9] However, appellant first filed his formal motion for speedy trial on April 27, 2005, more than two years after his arrest. *See Jones*, 168 S.W.3d at 349 (holding that a delay of nine months in asserting a right to a speedy trial weighed against

___

[9] The record demonstrates that appellant filed his pro se March 18, 2004 letter while he was represented by counsel. The court of criminal appeals has held that defendants are not entitled to hybrid representation. *See Scheanette v. State*, 144 S.W.3d 503, 505 n.2 (Tex. Crim. App. 2004) (citing *Patrick v. State*, 906 S.W.2d 481, 498 (Tex. Crim. App. 1995) (en banc); *Lockhart v. State*, 847 S.W.2d 568, 569 n.1 (Tex. Crim. App. 1992) (en banc)) (explaining that under Texas law, appellant does not have a right to hybrid representation). Therefore, we may not consider appellant's March 18, 2004 letter. *See id.*

11

the defendant). Furthermore, appellant's actions in requesting the appointment of new counsel and a psychiatric evaluation appear to undermine his desire for a speedy trial, considering these acts served to elongate the delay. Appellant's request for psychiatric evaluation is particularly troubling within the context of the speedy-trial analysis because this request effectively concluded the hearing conducted on his motion for speedy trial and, therefore, prevented the trial court from resolving this issue at that time. Given that: (1) appellant first filed his formal motion for speedy trial more than two years after his arrest; (2) he is not entitled to hybrid representation; and (3) he requested the appointment of new counsel and a psychiatric evaluation, both of which served to elongate the delay, we conclude that this factor weighs in favor of the State. *See id.*

### 4. Prejudice Resulting From the Delay

Prejudice, the fourth factor, is to be considered in light of the interests that the right to a speedy trial was designed to protect. *Barker*, 407 U.S. at 532. These interests include (1) prevention of extended pre-trial incarceration, (2) minimization of anxiety over pending charges, and (3) the prevention of actual prejudice to the defendant's ability to present a defense. *Id.* "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Dragoo*, 96 S.W.3d at 315 (quoting *Barker*, 407 U.S. at 532).

### i. Pre-Trial Incarceration and Anxiety

On appeal, appellant complains that he was worried and anxious about the resolution of this offense and that he endured excessive pre-trial incarceration. First, we note that appellant did not raise this concern in his motion for speedy trial. His motion merely stated that he was prejudiced by not having the trial "on or before June 27, 2005." Second, we find the fact scenario in this matter to be similar to that in *Kelly v. State*, 163

S.W.3d 722 (Tex. Crim. App. 2005). In *Kelly*, appellant was charged with possession of more than four grams of a controlled substance and was released on bond. *Id.* at 723. Later, the State filed a motion to revoke appellant's probation in a companion case, which resulted in a sentence of five years' incarceration. *Id.* In support of his speedy trial motion, appellant contended that the severity of the punishment range associated with the possession of a controlled substance offense worried him, and that he was anxious about his inability to find work because of the time commitments imposed by the necessity of court appearances. *Id.* at 724. In addressing appellant's arguments, the Texas Court of Criminal Appeals stated that:

> And appellant's then-existing incarceration attenuated any "Sword of Damocles" concern about the risk of future incarceration. That risk had been realized. Although this prosecution had the potential to add more time to that imprisonment, it was no longer true that a dramatic life-change was hanging over appellant's head, and in fact, the maximum punishment he could receive was significantly less than the sentence he was already serving. For these reasons, the trial court could have concluded that appellant's claims of anxiety and loss of work, even if believed, did not weigh in his favor because he was already incarcerated for another offense.

*Id.* at 728.

In the present matter, we have a similar situation. Appellant was already serving a life sentence for a manslaughter conviction. The maximum punishment facing appellant for the DWI offense—twenty years—was significantly less than the sentence that he was already serving. Appellant testified that he believed that the manslaughter conviction would be reversed due to lack of evidence. However, appellant's statement as to the success of his appeal in the manslaughter case is speculative and is not supported by the record. Therefore, because he was already serving a life sentence for his manslaughter conviction, we conclude that appellant's concerns regarding his pre-trial incarceration were too attenuated.

13

At the hearing on his motion for speedy trial, appellant testified to the following with respect to his anxiety:

> Q. Now, there was some testimony last time we were here, though, that this DWI case was causing you more anxiety than your actual manslaughter conviction; is that true or not that you're actually more anxious about—
>
> A. Well, yeah, because—yes, sir—actually—actually, I know that this one has been causing me—the DWI has been causing me anxiety because I know that that manslaughter charge is no good. I know that they're going to reverse that case. I know. I have the evidence that shows that that sentence cannot stand, so this gentleman intentionally withheld the DWI to see what would come about. But I wanted a trial and I knew that if they reversed my first charge, this man would not let me go home. He would not let me go. He would hold it back and that's what was really also driving me crazy at the time, too. I didn't know. I was like juggling "What's going to happen, what's going to happen?"
>
> Q. And you've had some explosive outbursts in this courtroom, you've demonstrated a lot of anger and hostility?
>
> A. Yes, sir. I'm sorry. I apologize. I apologize to the Court.
>
> Q. Is it the continued progress of this case—or perhaps the lack of progress in this case part of what's causing this anxiety that we see demonstrated in your behavior in the courtroom?
>
> A. Yes, sir. It's—it's—it's been pretty tough on me. I can't sleep at night. It's driving me—it's driving me crazy. Actually, I feel like it's just a conspiracy to have me convicted and keep me in prison. I don't want—I don't want to have to take drugs or anything like that to keep myself in control . . . .

With respect to the anxiety prong, the court of criminal appeals has held that:

> general anxiety "is at least some evidence of the type of 'anxiety' that the Supreme Court considers under the prejudice prong of *Barker*." But evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation.

*Cantu v. State*, 253 S.W.3d 273, 285-86 (Tex. Crim. App. 2008) (internal citations omitted).

14

Other than his generalized testimony, appellant has not directed us to anything in the record demonstrating that he suffered from "greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Id.* at 286. We therefore conclude that appellant has not satisfied the anxiety prong.

### ii. Appellant's Ability to Present a Defense

With respect to his ability to present a defense, appellant notes that because of the delay, "he forgot some details about the night of the incident." Appellant later asserts that "[t]he post-arrest delay in this case exceeds three years[,] and the delay was caused by the State's failure to bring the Appellant to trial. The court should conclude that the State did not overcome this presumption of prejudice." In his motion for speedy trial, appellant stated that: "Defendant will be prejudiced should trial not be held on or before June 27, 2005, for the reason that the passage of time has made it difficult to locate potential witnesses and for those witnesses to recall with any clarity the events that led to defendant's arrest."

The court of criminal appeals has addressed the issue of memory lapses over time with respect to a defendant's ability to present a defense. *See Munoz*, 991 S.W.2d at 829. In particular, the court has held that "*Barker* requires a defendant to show that 'lapses of memory' are in some way 'significant to the outcome' of the case." *Id.* (citing *Doggett*, 505 U.S. at 655-57 (stating that in the absence of "excessive" bad-faith or "excessive" negligent delay by the government, a defendant usually has to show "specific prejudice" to his defense); *Barker*, 407 U.S. at 534 (noting that the prejudice was "minimal" because, among other things, the record indicated "only two very minor lapses of memory" which "were in no way significant to the outcome")); *see United States v. Loud Hawk*, 474 U.S. 302, 315-16 (1986) (holding that the "possibility" of prejudice from "absence or loss of memory of

witnesses" was insufficient to support defendants' speedy trial claims and that the passage of time also "may make it difficult or impossible for the Government to carry [its] burden"). Appellant has not demonstrated how the alleged memory lapses significantly affected the outcome of the case and, therefore, hindered his ability to present a defense. In fact, the record suggests that appellant vividly recalled the events surrounding his arrest and that, as the State admits, "was able to contradict the testimony of the State's witnesses."[10] Consequently, appellant has failed to adequately demonstrate that the delay hindered his ability to present a defense.

Because appellant (1) was already serving a life sentence for manslaughter, (2) failed to demonstrate that he suffered from greater anxiety or concern than normally associated with a criminal conviction or investigation, and (3) did not demonstrate that the delay impaired his ability to present a defense, we conclude that appellant has not satisfied the prejudice prong of *Barker*. Therefore, this factor weighs in favor of the State.

### 5. Balancing the *Barker* Factors

The only *Barker* factor that clearly weighs in favor of appellant is the first factor pertaining to the length of the delay. Because the remaining *Barker* factors weigh in favor of the State, we conclude that the trial court did not err in denying appellant's motion for a speedy trial. Accordingly, we overrule appellant's first issue on appeal.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, appellant contends that Ysassi provided ineffective assistance of counsel. Appellant argues that Ysassi "never did anything on behalf of Appellant during the entire time of his representation" and that Ysassi failed to (1) file any motions, (2) urge

---

[10] Appellant admitted at trial that his memory lapses as to the facts in this case were caused by prior drug use.

his speedy trial demands, or (3) issue any subpoenas on his behalf, including one to a witness later identified at a pre-trial hearing. Conversely, the State asserts that the record does not establish Ysassi's reasons for his conduct or inaction, and that appellant has failed to establish that Ysassi's performance was deficient.

## A. Standard of Review

To establish ineffective assistance of counsel, appellant must show: (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 684 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.). Whether this test has been met is to be judged on appeal by the totality of representation, not by any isolated acts or omissions. *Jaynes*, 216 S.W.3d 839 at 851. The burden rests on the appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984)). Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if the appellant overcomes the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851. The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel or counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). Moreover, the acts or omissions that form the basis of appellant's claim of ineffective assistance must be supported by the record. *Thompson*, 9 S.W.3d at 814; *Jaynes*, 216 S.W.3d at 851. A silent record which provides no explanation for counsel's

actions usually will not overcome the strong presumption of reasonable assistance. *Thompson*, 9 S.W.3d at 813-14.

## B. Discussion

On August 11, 2003, the trial court appointed Ysassi to represent appellant at trial. On August 14, 2003, Ysassi filed a waiver of arraignment on behalf of appellant. In addition, Ysassi was present at a December 10, 2004 status hearing. At this hearing, Ysassi stated the following:

MR. YSASSI: I asked Bertha to set it, Judge, because there has been a couple of letters mailed to me from Mr. Perez. Currently[,] he is incarcerated in the penitentiary. He is serving a life sentence or a hundred[-]year sentence and he does have this felony DWI pending. Even back in March he had written the Court asking the Court to—for another court appointed lawyer to represent him on the DWI. As late as maybe two or three weeks ago[,] he wrote another letter again complaining about every lawyer that has ever touched this case, including myself, and I asked Bertha to put it up on a status hearing. My understanding is that there is no trial settings yet on the case, and he's so dissatisfied with me on the case—

. . . .

MR. YSASSI: And, Judge, being that he keeps writing, I guess, complaining, that's the way I read that, as a complaint—in one of them he makes it clear that he wants another court appointed lawyer. I just don't feel that I can go on representing Mr. Perez. He can be convicted of this DWI, and the first thing he's going to say is I've been asking the Court all this time for a court appointed lawyer. So just to avoid any further problems with Mr. Perez—

THE COURT: Okay.

[The State]: I believe the Court received a letter or a request from the Defendant back in March of '04, this year, asking for a new attorney, too.

18

At various stages in this case and his manslaughter case, appellant has been represented by seven different attorneys, and he has asserted that each attorney failed to properly represent him and even alleged that each of his attorneys were "in cahoots" with the State to ensure that he remain in prison. Appellant first took issue with Ysassi's representation via his March 18, 2004 letter. In this letter, appellant alleged the following:

> Your Honor, I have a big conflict of interest with an appointed attorney Mr. Ysassi. I['] ve wrote [sic] him numberous [sic] times and I['] ve had my girlfriend try to get in-touch [sic] with him also. He fails to inform me about my felony D.W.I. He has failed to even send me appearance date copies of my trial[;] he has failed to conduct or help prepare a defense. I'm requesting a new counsel. One of my Texas Constitional [sic] rights is a right to a speedy trial and an effective assistance of counsel. I have filed an application for a new attorney.

Despite his allegations, the record shows that appellant is incorrect in stating that Ysassi did nothing on his behalf, as shown by the filing of the waiver of arraignment and Ysassi's appearance at the December 10, 2004 status hearing. Furthermore, the record is silent as to Ysassi's alleged inaction with respect to the urging of appellant's desire for a speedy trial and the issuance of a subpoena to a "Mr. Alonzo."[11] *See Thompson*, 9 S.W.3d at 813-14; *see also Walker v. State*, 201 S.W.3d 841, 850 (Tex. App.–Waco 2006, pet. ref'd) ("If nothing in the record reveals the reason for the act or omission which is the basis of an ineffective assistance complaint, we may not speculate on that reason."); *Jaile v. State*, 836 S.W.2d 680, 687 (Tex. App.–El Paso 1992, no pet.) ("The mere failure of counsel to file appropriate pretrial motions shall not be categorically deemed as ineffective assistance, and this rule applies to motions to dismiss for an alleged lack of a speedy

---

[11] Appellant admitted at an August 17, 2005 hearing on his motion for a speedy trial that he had just learned of the existence of "Mr. Alonzo" prior to the hearing; however, appellant argued that "Mr. Alonzo" could be a material witness to his case. Appellant also admitted that "Mr. Alonzo" was arrested at the same time he was and that "Mr. Alonzo" was also charged with felony DWI. Appellant later testified that "Mr. Alonzo" did not remember the night in question.

trial."). In addition, appellant has not demonstrated how, but for Ysassi's alleged errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 684. We therefore conclude that appellant has failed to overcome the strong presumption of reasonable assistance. *See Strickland*, 466 U.S. at 689; *Thompson*, 9 S.W.3d at 813-14; *Jaynes*, 216 S.W.3d at 851. Accordingly, we overrule appellant's second issue.

## IV. CONCLUSION

Having overruled both of appellant's issues on appeal, we affirm the judgment of the trial court.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 4th day of December, 2008.

20