

# IN THE
# TENTH COURT OF APPEALS

### No. 10-10-00380-CR

**HERMAN LEE KINDRED,**

Appellant

 **v.**

**THE STATE OF TEXAS,**

Appellee

**From the 18th District Court
Johnson County, Texas
Trial Court No. F43788**

## MEMORANDUM  OPINION

Appellant, Herman Lee Kindred, was indicted for the offense of theft of property valued at less than $1,500, ordinarily a class A misdemeanor.  *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(3) (West 2011).  The indictment also contained a paragraph noting that Kindred had been convicted of theft twice before, thus enhancing the offense to a state-jail felony.  *See id.* § 31.03(e)(4)(D).  Also included in the indictment were felony-enhancement paragraphs, which further elevated this offense to a second-degree felony. *See id.* § 12.42(a)(2) (West 2011).  After a jury trial, Kindred was convicted of the charged

offense and was sentenced to eighteen years' confinement in the Texas Department of Criminal Justice—Institutional Division with a $1,000 fine. In five issues, Kindred argues that: (1) the evidence supporting his conviction is insufficient; (2) the trial court erred in denying his motion for directed verdict; (3) the trial court abused its discretion by imposing a grossly disproportionate sentence to the offense committed; (4) the sentence imposed is illegal; and (5) the trial court erred by denying his motion for speedy trial. We affirm.

## I. BACKGROUND

On May 21, 2009, at approximately 1:00 p.m., Kindred, a Wal-Mart truck driver, entered a Wal-Mart store located in Cleburne, Texas. Upon entering the store through the general merchandise doors, Kindred immediately caught the attention of Ricky and Danny Danals, who are Wal-Mart Asset Protection Associates. Both Ricky and Danny observed that, upon entering the store, Kindred looked up directly at an overhead surveillance camera and then walked swiftly to the women's department, which is located near the general merchandise doors. Ricky and Danny deemed Kindred's actions as suspicious and subsequently followed and observed Kindred. They observed Kindred take two shirts and two pair of pants off of a clothing rack in the women's department and conceal them in the front of his pants. Kindred then left the store without paying for the items.[1]

---

[1] Oddly enough, this is not the first time Kindred has been convicted of stealing women's clothing. In any event, the clothing stolen in this case was valued at approximately $80.

Having observed the theft, Ricky called Jimmy Williams, another Wal-Mart Asset Protection Associate, and informed him that he and Danny were going to confront Kindred about the apparent theft. Jimmy called another Wal-Mart Asset Protection Associate, Bryan Payne, to ask for his assistance.[2] Jimmy also called the Cleburne Police Department.

Ricky and Danny first approached Kindred in the store's parking lot. When Danny said, "[e]xcuse me," Kindred sprinted towards the back of the parking lot toward where he had parked his Wal-Mart tractor-trailer, the getaway vehicle. As he was running, Kindred pulled the stolen women's clothing out of his pants and threw them into the air. Shortly thereafter, Rick and Danny caught up with Kindred and forced him to the ground. Kindred continued to struggle even when Jimmy joined the effort. Eventually, Sergeant Ken Meador and Corporal Dru Summey of the Cleburne Police Department arrived. Sergeant Meador and Corporal Summey investigated the incident, took statements from the Wal-Mart employees, and arrested Kindred.

Kindred was indicted with one count of "Theft Less than $1,500 with Two Prior Theft Convictions." Specifically, the indictment alleged that on or about May 21, 2009, Kindred "did then and there: UNLAWFULLY APPROPRIATE, BY ACQUIRING OR OTHERWISE EXERCISING CONTROL OVER PROPERTY, TO WIT: CLOTHING FROM RICKY DANALS, THE OWNER THEREOF, WITH INTENT TO DEPRIVE THE OWNER OF THE PROPERTY." The indictment also included two felony-enhancement

---

[2] Ricky, Danny, Jimmy, and Bryan were assigned to the Cleburne Wal-Mart as Asset Protection Associates as a part of a "blitz" to reduce rampant shoplifting that had occurred at the store.

paragraphs pertaining to Kindred's prior felony convictions for bail jumping and forgery by passing.

At trial, Kindred pleaded "not guilty" to the charged offense, but he pleaded "true" to the theft-enhancement paragraphs. After hearing all of the evidence, the jury convicted Kindred of the charged offense. During the punishment phase, Kindred pleaded "true" to the felony enhancement paragraphs, and the jury sentenced him to eighteen years' confinement with a $1,000 fine. Thereafter, Kindred filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. APP. P. 21.8. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE SUPPORTING KINDRED'S CONVICTION

In his first issue, Kindred argues that the evidence supporting his conviction is insufficient. In particular, Kindred contends that the State failed to prove that Ricky Danals is the owner of the property allegedly stolen and, thus, the evidence is insufficient to establish the essential elements of theft.

### A. Applicable Law

In reviewing the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *see Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010). Furthermore, we must consider all the evidence admitted at trial, even improperly admitted evidence, when performing a sufficiency review. *Clayton v. State*, 235 S.W.3d

772, 778 (Tex. Crim. App. 2007). And, in viewing the evidence in the light most favorable to the prosecution, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). The standard of review is the same for direct and circumstantial evidence cases, or in other words, circumstantial evidence is as probative as direct evidence in establishing an actor's guilt. *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically-correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1). An "owner" is defined as a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." *Id.* § 1.07(a)(35)(A) (West 2011).

## B. Discussion

In arguing that the State failed to present sufficient evidence to support his conviction, Kindred relies heavily on the decision in *Byrd v. State*, 336 S.W.3d 242 (Tex. Crim. App. 2011). In *Byrd*, the court of criminal appeals noted the following:

> The existence of the specific owner is an element, but not his name. Section 31.03(a) of the penal code sets out the offense of theft . . . . And subsection (b)(1) states, "appropriation of property is unlawful if . . . it is without the owner's effective consent." There are no names set out in the

theft statute. . . . Nowhere in the penal code is the name of the owner made a substantive element of theft.

However, the Code of Criminal Procedure, as a matter of state law, requires the State to allege the name of the owner of property in its charging instrument. Under Texas pleading rules, ownership may be alleged in either the actual owner or a special owner. A special owner is a person who has actual custody or control of property that belongs to another person. For example, if Dad owns a car and loans it to Daughter, and Defendant steals it from the shopping mall where Daughter parked it, the State could allege either Dad—the title or "actual owner"—or Daughter—the "special owner" who actually possessed the car at the time it was stolen—in its theft indictment. When an entity, such as a corporation, owns property, the traditionally preferable practice had been to allege ownership in a natural person acting for the corporation. But as Judge Clinton noted, this practice developed in the early twentieth century before the adoption of the 1974 Penal Code when the definition of "owner" for purposes of the theft statutes was much narrower. Judge Clinton explained that, under the current Penal Code, a corporation may both own and have actual possession of property. Thus it is perfectly permissible, and sometimes preferable, to now allege the corporation—Wal-Mart, for example—as the owner of the property and then call any agent or employee who holds a relevant position in the company to testify that the corporation did not give effective consent for a person to steal or shoplift its property.

Although the *name* of the owner is not a substantive element of theft, the State is required to prove, beyond a reasonable doubt, that the person (or entity) alleged in the indictment as the owner is the same *person* (or entity)—regardless of the name—as shown by the evidence.

*Id.* at 251-53 (emphasis in original) (footnotes omitted). The *Byrd* court ultimately concluded that the evidence was insufficient to sustain defendant's theft conviction because "[n]ot only did the State fail to offer any evidence that 'Mike Morales'—the person alleged in the theft indictment—had any ownership interest in or relationship to the property appellant shoplifted, but the jury, without any apparent concern for the missing 'Mike Morales,' convicted her nevertheless." *Id.* at 253, 258.

Here, the indictment alleged that Ricky Danals is the owner of the women's clothing that Kindred stole from the Wal-Mart store. Ricky testified that he was employed as an Asset Protection Associate at the Cleburne Wal-Mart on May 21, 2009, the day that Kindred committed the theft. Essentially, Ricky was named in the indictment as a "special owner" who was acting on behalf of a corporation—Wal-Mart. *See Dingler v. State*, 705 S.W.2d 144, 145 (Tex. Crim. App. 1984) ("[W]hen property referred to in a charging instrument belongs to a corporation, it is not only permissible but the better pleading practice to allege ownership in a natural person acting for the corporation, the true owner of the property."). The court of criminal appeals has held that a security guard hired to protect the property of a business and to keep the property from being stolen, as Ricky was in this case, has a greater right of possession to the stolen property by virtue of his employment. *See Johnson v. State*, 606 S.W.2d 894, 896 (Tex. Crim. App. 1980); *see also Freeman v. State*, 707 S.W.2d 597, 605 (Tex. Crim. App. 1986) ("Ownership of some form of possessory interest in someone other than the accused is an essential element of the offense. Such must be alleged and proved. However, where the accused does not assert a possessory interest in property allegedly stolen, but the State proves that another had a possessory interest in the property, then, as a matter of law, between the two, the latter has established that he had the greater right to possession of the property, and in turn the State has established a prima facie case of ownership."). In addition, we note that, while the practice may be "antiquated," as Kindred alleges, the *Byrd* court did not specifically prohibit the State from naming a "special owner" in the indictment as the owner of the stolen property rather than the

corporation itself. *See Byrd*, 336 S.W.3d at 251-53. We therefore conclude that, because Ricky had a greater possessory right to the stolen property than Kindred, the State properly asserted Ricky as a "special owner" in the indictment.

Next, we examine the evidence with regard to the remaining theft elements. The record reflects that Ricky and Danny observed Kindred: (1) enter the Wal-Mart store; (2) look up at the surveillance camera situated above the entrance; (3) walk swiftly to the women's department; (4) take two shirts and two pair of pants—worth approximately $80—off of a clothing rack; (5) place the clothing in the front part of his pants; and (6) exit the store without paying for the clothing. When confronted, Kindred ran towards the back of the parking lot while wildly throwing the stolen clothing into the air. Ricky, Danny, and other Wal-Mart Asset Protection Associates eventually caught up with Kindred, but he continued to desperately fight to break free and escape. *See Clayton*, 235 S.W.3d at 780 (stating that a fact-finder may draw an inference of guilt from the circumstance of flight from the crime scene). When viewed in the light most favorable to the prosecution, we conclude that the evidence demonstrated that Kindred had a clear intent to deprive Ricky, the "special owner," of the women's clothing taken from the Wal-Mart store. *See* TEX. PENAL CODE ANN. § 31.03(a); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 902, 912. As such, we further conclude that the evidence is sufficient to sustain Kindred's theft conviction. *See* TEX. PENAL CODE ANN. § 31.03(a); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Brooks*, 323 S.W.3d at 902, 912. Accordingly, we overrule Kindred's first issue.

## III. KINDRED'S MOTION FOR DIRECTED VERDICT

In his second issue, Kindred contends that the trial court erred in denying his motion for a directed verdict. However, the Texas Court of Criminal Appeals has held that a challenge to the trial court's denial of a motion for a directed verdict is treated as a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *see Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1990) ("A challenge to the trial judge's ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction."). Because we have already concluded that the evidence is sufficient to sustain Kindred's conviction, we cannot say that the trial court erred in denying his motion for a directed verdict. *See Williams*, 937 S.W.2d at 482; *see also Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993); *Madden*, 799 S.W.2d at 686. Accordingly, Kindred's second issue is overruled.

## IV. KINDRED'S SENTENCE

In his third and fourth issues, Kindred challenges the sentence imposed. Specifically, Kindred asserts that his sentence: (1) is illegal and that the Legislature intended to limit punishment on all theft offenses to the range associated with state-jail felonies; and (2) is unconstitutionally excessive and constitutes cruel and unusual punishment.

## A. The Legality of Kindred's Sentence

In arguing that his sentence is illegal and, therefore, unauthorized by law, Kindred contends this his situation is analogous to that involved in *Brown v. State*, 14 S.W.3d 832 (Tex. App.—Austin 2000, pet. ref'd). The *Brown* court addressed a situation where a defendant was charged with class C misdemeanor theft for stealing $10.36 worth of meat, cheese, and beer from a grocery store. *Id.* at 832. The offense was enhanced to a state-jail felony because the defendant had two prior misdemeanor theft convictions. *Id.*; *see* TEX. PENAL CODE ANN. § 31.03(e)(4)(D). However, the State sought to further enhance the defendant's punishment to second-degree-felony status with evidence that he had three prior felony convictions, also for theft. *Brown*, 14 S.W.3d at 832; *see* TEX. PENAL CODE ANN. § 12.42(a)(2). The jury found all of the enhancements to be true and, in accordance with the punishment range prescribed for second-degree felonies, sentenced the defendant to fourteen years in prison. *Brown*, 14 S.W.3d at 832.

In concluding that the sentence imposed was not authorized by law, the *Brown* court noted the following:

> Section 31.03(e)(4)(D) provides that theft of property having a value of less than $1500 is a state[-]jail felony if the defendant "has been previously convicted two or more times of any grade of theft." (Emphasis added.) Under this subsection, a defendant's history of theft convictions, regardless of their number or degree, cannot elevate a subsequent theft of property worth less than $1500 beyond the status of a state[-]jail felony. For this reason, the punishment for [a] third offense [of] theft under section 31.03(e)(4)(D) cannot be enhanced pursuant to section 12.42(a) by proof of additional felony theft convictions. *See Rawlings v. State*, 602 S.W.2d 268, 270 (Tex. Crim. App. 1980) (applying substantially identical prior statutes); *Freeman v. State*, 970 S.W.2d 55, 59-60 (Tex. App.—Tyler

1998, no pet.) (applying current statutes); *see also Gant v. State*, 606 S.W.2d 867, 871 n.9 (Tex. Crim. App. 1980).

*Id.* at 832-33.

This case, however, is factually distinguishable from the *Brown* case. Here, the State proffered evidence that Kindred had several prior theft convictions. And at trial, Kindred pleaded "true" to the theft enhancement paragraphs contained in the indictment. In addition, unlike *Brown*, the State proffered evidence of two non-theft felony offenses of which Kindred was convicted—felony bail jumping on May 31, 1989 and forgery by passing on December 11, 1984.[3] *See id.* at 832. Once again, Kindred pleaded "true" to the felony enhancement paragraphs contained in the indictment. Because he had been previously convicted of at least two additional thefts, section 31.03(e)(4)(D) authorized the enhancement of Kindred's sentence from a class A misdemeanor to a state-jail felony. *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(D). And because he also had been previously convicted of two non-theft felonies, section 12.42(a)(2) authorized the further enhancement of Kindred's punishment to a second-degree felony. *See id.* § 12.42(a)(2). Furthermore, the jury's sentence of eighteen years falls within the range prescribed for second-degree felonies. *See id.* § 12.33 ("An individual adjudged guilty of a felony of the second degree shall be punished by imprisonment . . . for any term of not more than 20 years or less than 2 years."). Because Kindred's sentence falls within the range prescribed for second-degree felonies,

---

[3] We note that forgery does not fall into the category of theft offenses for purposes of Texas Penal Code Section 31.03(e)(4). *See Shaw v. State*, 794 S.W.2d 544, 545 (Tex. App.—Dallas 1990, no pet.); *see also Watson v. State*, 923 S.W.2d 829, 833-34 (Tex. App.—Austin 1996, pet. ref'd). Therefore, felony forgery convictions can be used to enhance punishment pursuant to section 12.42(a) of the penal code. *See* TEX. PENAL CODE ANN. § 12.42(a) (West 2011).

we cannot say that the sentence is unauthorized by law or illegal. *See Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003) (stating that a sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal); *see also Harms v. State*, No. 10-09-00226-CR, 2011 Tex. App. LEXIS 4358, at *3 (Tex. App.—Waco June 8, 2011, no pet.) (mem. op., not designated for publication).

## B. Excessiveness

In his motion for new trial, Kindred asserted that his sentence "violates his Constitutional protection to be free from [d]isproportionate [s]entences." "Generally, punishment assessed within the statutory limits is not excessive, cruel, or unusual punishment." *Dale v. State*, 170 S.W.3d 797, 799 (Tex. App.—Fort Worth 2005, no pet.) (citing *Jordan v. State*, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973); *Alvarez v. State*, 63 S.W.3d 578, 580 (Tex. App.—Fort Worth 2001, no pet.)). Given our conclusion that Kindred's sentence is authorized by law and within the prescribed range for second-degree felonies, we cannot say that his eighteen-year sentence is excessive. *See id.*; *see also Jordan*, 495 S.W.2d at 952; *Alvarez*, 63 S.W.3d at 580.

## C. Proportionality

The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishment, which includes extreme sentences that are grossly disproportionate to the crime. *Graham v. Florida*, __U.S.__, 130 S. Ct. 2011, 2021, 176 L. Ed. 2d 825 (2010); *see* U.S. CONST. amend. VIII. "A narrow exception to the general rule that a sentence within the statutory limits is not excessive, cruel, or unusual is recognized when the sentence is grossly disproportionate to the offense." *Dale*, 170

S.W.3d at 799; *see Harmelin v. Michigan*, 501 U.S. 957, 1004-05, 111 S. Ct. 2680, 2707, 115 L. Ed. 2d 836 (1991) (Kennedy J., concurring); *Solem v. Helm*, 463 U.S. 277, 290-92, 103 S. Ct. 3001, 3010-11, 77 L. Ed. 2d 637 (1983); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir.), *cert. denied*, 506 U.S. 849, 113 S. Ct. 146, 121 L. Ed. 2d 98 (1992).

The United States Supreme Court identified the following three criteria to be used to evaluate the proportionality of a particular sentence: (1) the gravity of the offense and the harshness of punishment; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) sentences imposed for the same offenses in other jurisdictions. *Solem*, 463 U.S. at 292, 103 S. Ct. at 3011; *see Alvarez*, 63 S.W.3d at 580-82. Only if we determine that the sentence is grossly disproportionate to the offense do we consider the remaining *Solem* factors. *Id.*

Kindred's extensive criminal history is documented in the record. *See Buster v. State*, 144 S.W.3d 71, 81 (Tex. App.—Tyler 2004, no pet.) (noting that, in determining whether a sentence is grossly disproportionate, we consider not only the present offense but also an accused's criminal history) (citing *Davis v. State*, 119 S.W.3d 359, 363 (Tex. App.—Waco 2003, pet. ref'd)). He has at least ten prior criminal convictions on his record, including several theft convictions, a conviction for burglary of a habitation, a bail-jumping conviction, two forgery convictions, and a conviction for burglary of a motor vehicle. Several of Kindred's convictions were felonies that resulted in imprisonment terms in excess of ten years, including one that yielded a life sentence. Given Kindred's extensive criminal history and the fact that the sentence imposed falls within the limits prescribed by a valid statute, we conclude that Kindred's sentence is

not so grossly disproportionate to the offense as to constitute cruel and unusual punishment. *See Solem*, 463 U.S. at 292, 103 S. Ct. at 3011; *see also Buster*, 144 S.W.3d at 81; *Davis*, 119 S.W.3d at 363; *Alvarez*, 63 S.W.3d at 580-82. Accordingly, we overrule Kindred's third and fourth issues.

## V.  MOTIONS FOR SPEEDY TRIAL

In his fifth issue, Kindred asserts that the trial court erred in denying his motions for speedy trial. Specifically, Kindred argues that he was entitled to a dismissal because his repeated requests for a speedy trial did not yield a timely trial setting. We disagree.

### A.  Standard of Review

When reviewing a trial court's decision on a speedy trial claim, an appellate court applies a bifurcated standard of review. *State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999); *State v. Jones*, 168 S.W.3d 339, 345 (Tex. App.—Dallas 2005, pet. ref'd). We review legal issues de novo but give deference to the trial court's resolution of factual issues. *Kelly v. State*, 163 S.W.3d 722, 726 (Tex. Crim. App. 2005); *Munoz*, 991 S.W.2d at 821; *Jones*, 168 S.W.3d at 345. We review a speedy trial claim in light of the arguments, information, and evidence that was available to the trial court at the time it ruled. *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003); *Jones*, 168 S.W.3d at 345. Under this standard of review, deference must be given not only to a trial court's resolution of disputed facts, but also to the drawing of reasonable inferences from the facts. *Kelly*, 163 S.W.3d at 726.

We must uphold the trial court's ruling if it is supported by the record and is correct under the applicable law. *Shaw*, 117 S.W.3d at 889; *Munoz*, 991 S.W.2d at 821;

*Jones*, 168 S.W.3d at 345. If a violation of the defendant's right to a speedy trial is established, the only possible remedy is dismissal of the prosecution. *Strunk v. United States*, 412 U.S. 434, 440, 93 S. Ct. 2260, 2263-64, 37 L. Ed. 2d 56 (1973); *Dragoo*, 96 S.W.3d at 313; *Jones*, 168 S.W.3d at 346.

## B. Applicable Law

The Sixth Amendment to the United States Constitution provides, in relevant part, that "in all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial." U.S. CONST. amend. VI; *Barker v. Wingo*, 407 U.S. 514, 515, 92 S. Ct. 2182, 2184, 33 L. Ed. 2d 101 (1972). This right was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. U.S. CONST. amend. XIV; *see Klopfer v. North Carolina*, 386 U.S. 212, 223-26, 87 S. Ct. 988, 993-95, 18 L. Ed. 2d 1 (1967).

The Texas Constitution likewise provides that "in all criminal prosecutions the accused shall have a speedy . . . trial." TEX. CONST. art. 1, § 10. The Texas Court of Criminal Appeals has traditionally analyzed state constitutional claims of the denial of a speedy trial under the factors articulated in *Barker*. *See Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).

The primary burden is on the prosecution and the courts to ensure that defendants are speedily brought to trial. *See Chapman v. Evans*, 744 S.W.2d 133, 136-37 (Tex. Crim. App. 1988) (orig. proceeding) (citing *Turner v. State*, 504 S.W.2d 843, 845 (Tex. Crim. App. 1974); *McKinney v. State*, 491 S.W.2d 404, 407 (Tex. Crim. App. 1973)). In determining whether one has been denied his federal or state right to a speedy trial, a court must use a balancing test to weigh the conduct of both the State and the

defendant. *See Shaw*, 117 S.W.3d at 888 (citing *Barker*, 407 U.S. at 530, 92 S. Ct. at 2191-92). The relevant factors to be weighed include, but are not necessarily limited to: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his speedy-trial right; and (4) any prejudice to the defendant resulting from the delay. *Id.* at 888-89. These "factors must be considered together with other relevant circumstances." *State v. Smith*, 76 S.W.3d 541, 547 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd). And, "[n]o single factor is necessary or sufficient to establish a violation of the right to a speedy trial." *Dragoo*, 96 S.W.3d at 313 (citing *Barker*, 407 U.S. at 533, 92 S. Ct. at 2193-94). We now turn to our de novo review and independent weighing and balancing of the relevant *Barker* factors.

## C. Discussion

### 1. Length of Delay

The length of delay is a triggering mechanism for analysis of the other three *Barker* factors. *Barker*, 407 U.S. at 530-33, 92 S. Ct. at 2191-94; *Munoz*, 991 S.W.2d at 821. Unless the delay is presumptively prejudicial, we need not inquire into the other *Barker* factors. *Munoz*, 991 S.W.2d at 821. Generally, a delay of eight months or longer is considered "presumptively prejudicial" and triggers speedy trial analysis. *Whitfield v. State*, 137 S.W.3d 687, 690 (Tex. App.—Waco 2004, no pet.); *State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App.—San Antonio 1998, no pet.). However, the length of the delay that will invoke such an inquiry depends upon the circumstances of each case. *Zamorano*, 84 S.W.3d at 648-49.

The United States Supreme Court has noted that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 531, 92 S. Ct. at 2192; *Zamorano*, 84 S.W.3d at 649. If the accused demonstrates that the time from accusation to trial "has crossed the threshold dividing 'ordinary' from 'presumptively prejudicial' delay, a court must then consider the extent to which that delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Zamorano*, 84 S.W.3d at 649. Therefore, a "speedy trial analysis depends first upon whether the delay is more than 'ordinary'; if so, the longer the delay beyond that which is ordinary, the more prejudicial that delay is to the defendant." *Id.* The length of delay for speedy trial purposes is measured from the time the defendant is arrested or formally accused. *United States v. Marion*, 404 U.S. 307, 313, 92 S. Ct. 455, 474-75, 30 L. Ed. 2d 468 (1971); *Smith*, 76 S.W.3d at 547.

Here, Kindred was arrested on May 21, 2009, and his trial date was October 13, 2010. This amounts to a length of delay of about seventeen months. Under governing case law, this delay is "presumptively prejudicial" and triggers further analysis; however, this presumption may be rebutted by the remaining *Barker* factors. *See Marion*, 404 U.S. at 313, 92 S. Ct. at 474-75; *Zamorano*, 84 S.W.3d at 649; *Rangel*, 980 S.W.2d at 843; *see also Whitfield*, 137 S.W.3d at 690-92.

### 2. Reasons for the Delay

The State bears the burden of justifying the delay. *Rangel*, 980 S.W.2d at 843. Courts assign different weights to different reasons for a delay. *Dragoo*, 96 S.W.3d at 314. A deliberate attempt to delay a trial is weighed heavily against the State, while

more neutral reasons, such as negligence or overcrowded dockets, are weighed less heavily. *Zamorano*, 84 S.W.3d at 649. When the record is silent regarding the reasons for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense, nor a valid reason for the delay. *Dragoo*, 96 S.W.3d at 314. A valid reason, however, justifies appropriate delay. *Id.*

In analyzing this prong of the *Barker* test, we must consider the conduct of both the State and Kindred. *See Burgett v. State*, 865 S.W.2d 594, 597 (Tex. App.—Fort Worth 1993, pet. ref'd) ("Delay caused by acts of the accused which are beyond the control of the prosecution should not weigh against the State. In fact, a defendant may be disentitled to the speedy trial safeguard when he has or shares responsibility.") (citing *Dickey v. Florida*, 398 U.S. 30, 48, 90 S. Ct. 1564, 1574, 26 L. Ed. 2d (1970); *United States v. Smith*, 534 F.2d 74, 75-76 (5th Cir. 1976)). However, we must keep in mind the excessiveness of the delay because the presumption that pretrial delay has prejudiced the accused intensifies over time. *See Doggett v. United States*, 505 U.S. 647, 652, 112 S. Ct. 2686, 2690-91, 120 L. Ed. 2d 520 (1992).

Though approximately seventeen months elapsed from Kindred's arrest until his trial, the record contains several explanations for the delay. Initially, Kindred was represented by counsel. Counsel requested, on Kindred's behalf, that the case be passed on several occasions, including hearings conducted on September 22, 2009; November 3, 2009; and January 5, 2010. Prior to the January 5, 2010 hearing, Kindred was out on bail. However, while out on bail, Kindred allegedly committed another theft, which resulted in his arrest on March 25, 2010, and his subsequent incarceration in

Temple, Texas. Later, at a April 27, 2010 hearing, Kindred's counsel announced in open court his intent to withdraw from representing Kindred. Kindred's counsel acknowledged that Kindred wanted another lawyer, and Kindred stated, in open court, that he desired to represent himself, which the trial court allowed after administering warnings and instructions to Kindred.

Kindred informed the trial court that he had filed three speedy trial motions and that the first one was filed on July 23, 2010, though this first motion is not included in the clerk's record. The other two speedy trial motions were filed on August 16, 2010 and August 25, 2010. On August 3, 2010, evidently after receiving Kindred's first speedy trial motion, the trial court conducted a hearing. At this hearing, the trial court offered Kindred a trial date for the following Monday, August 9, 2010. Kindred declined the trial court's offer and insisted that the trial court conduct hearings on several pro se motions he had filed. As a result, the trial court conducted a hearing on all of Kindred's pre-trial motions on August 31, 2010, and subsequently set the case for trial on October 13, 2010.[4]

Based on our review of the record, much, if not all, of the delay in procuring a final trial in this matter are attributable to Kindred's actions. Kindred's request for new counsel, insistence on hearings for all of his numerous pre-trial motions, and his commission of another theft offense contributed greatly to the delay in this case. *See Zamorano*, 84 S.W.3d at 649 (noting that neutral reasons for delays, such as overcrowded

___

[4] Also at the hearing on Kindred's pre-trial motions, the trial court reminded Kindred that he had been scheduled for trial on February 22, 2010, but Kindred did not show. As a result of his no-show, Kindred's bond was forfeited.

dockets, are weighed less heavily against the State); *Easley v. State*, 564 S.W.2d 742, 745 (Tex. Crim. App. 1978) (holding "[t]hat appellant was being prosecuted on other charges constitutes a valid reason for the delay in bringing him to trial"); *Holmes v. State*, 938 S.W.2d 488, 491 (Tex. App.—Texarkana 1996, no pet.) (stating that delays caused by, among other things, the appointment of new counsel "are not chargeable against the State"). Furthermore, on appeal, Kindred has not cited anything in the record demonstrating that the State deliberately delayed his trial in an attempt to prejudice his defense. Instead, Kindred blames the entire delay on the trial court's alleged overcrowded docket. Nevertheless, based on the foregoing, we conclude that this factor weighs in favor of the State.

### 3. Kindred's Assertion of His Right to a Speedy Trial

A defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant was being deprived of the right. *Barker*, 407 U.S. at 531-32, 92 S. Ct. at 2192-93. A defendant has some responsibility to assert his right to a speedy trial, and his failure to do so strongly indicates that he did not really want a speedy trial. *See Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992). The manner in which a defendant raises a speedy-trial complaint is also significant. *See id.*

As noted earlier, Kindred filed his first motion for speedy trial on July 23, 2010, more than a year after he was arrested for this offense. Texas courts have held that delays shorter than the one involved here weigh against the defendant. *See Whitfield*, 137 S.W.3d at 691 (stating that defendant's failure to assert his right to a speedy trial for over 300 days weighed against him); *Jones*, 168 S.W.3d at 349 (holding that a delay of

nine months in asserting a right to a speedy trial weighed against the defendant).  In addition, the trial court offered Kindred a trial date a few days after the hearing on his first motion for speedy trial was conducted, but Kindred rejected this offer. Furthermore, six different pre-trial hearings were conducted in this matter beginning with his arraignment on August 25, 2009, and it was not until July 23, 2010 that Kindred decided to first assert his right to a speedy trial.  Based on the foregoing, we conclude that this factor weighs against Kindred.

### 4.  Prejudice Resulting from the Delay

Prejudice, the fourth factor, is to be considered in light of the interests that the right to a speedy trial was designed to protect.  *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193. These interests include:   (1) prevention of extended pre-trial incarceration; (2) minimization of anxiety over pending charges; and (3) the prevention of actual prejudice to the defendant's ability to present a defense.  *Id.*  "Of these forms of prejudice, 'the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'"  *Dragoo*, 96 S.W.3d at 315 (quoting *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193).

With regard to the prejudice prong, Kindred complains that he was forced to remain in custody between July 13, 2010 and October 13, 2010, and that his incarceration caused him to lose his job as a truck driver for Wal-Mart and led to a disruption of his family life and financial affairs.  Kindred also alleged that his "stay in jail was filled with anxiety and stress regarding the charges against him.  [He] could not avoid the pressure of the upcoming trial and all [he] wished was for it to be over."

We first note that, with regard to this matter, Kindred was out on bond until he was arrested for having committed another theft offense in Bell County on November 9, 2009. This second theft constituted a violation of Kindred's bond provisions. Thus, he was incarcerated for not only this offense but also the second theft offense committed in Bell County. "'Under these circumstances we are . . . mainly concerned with whether or not appellant's ability to defend himself was prejudiced by the delay.'" *Dragoo*, 96 S.W.3d at 315 (quoting *McCarty v. State*, 498 S.W.2d 212, 218 (Tex. Crim. App. 1973)).

The most important consideration is whether the defense was impaired by the delay. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193; Munoz, 991 S.W.2d at 826. On appeal, Kindred has not demonstrated that his defense was impaired in any way by the delay. In fact, the record reflects that, after Kindred rejected the trial court's offer to conduct a trial on August 9, 2010, the trial court scheduled another hearing to accommodate Kindred's request to argue all of his remaining pre-trial motions. Furthermore, Kindred did not present any evidence at the hearings on his motions for speedy trial showing that he was prejudiced. And, to the extent that Kindred argues that the prejudice prong was satisfied by his general allegations of anxiety and stress, we note that the court of criminal appeals has held that:

> [G]eneral anxiety is at least some evidence of the type of anxiety that the Supreme Court considers under the prejudice prong of *Barker*. But evidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the Barker test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation.

*Cantu v. State*, 253 S.W.3d 273, 285-86 (Tex. Crim. App. 2008) (internal citations & quotation marks omitted). On appeal, Kindred does not cite any evidence in the record demonstrating more than generalized anxiety. *See id.* Therefore, based on the foregoing, we conclude that this factor weighs in favor of the State.

**5. Balancing the *Barker* Factors**

The only *Barker* factor that clearly weighs in favor of Kindred is the first factor pertaining to the length of the delay. Because the remaining *Barker* factors weigh in favor of the State, we conclude that the trial court did not err in denying Kindred's motions for a speedy trial. Accordingly, we overrule Kindred's fifth issue.

## VI. CONCLUSION

Having overruled all of Kindred's issues, we affirm.

AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed September 21, 2011
[CR25]