The STATE of Texas, Appellant,

v.

David Wayne JONES, Appellee.

No. 05–04–00819–CR.

Court of Appeals of Texas, Dallas.

July 26, 2005.

William T. (Bill) Hill, Jr., John Henry Stone, Asst. Dist. Atty., Dallas, and Katharine K. Decker, Asst. Dist. Atty., McKinney, for State.

Thomas G. Pappas, Burleson Pate & Gibson, LLP, Dallas, for Appellee.

Before Justices BRIDGES, FRANCIS, and LAGARDE [1].

## OPINION

Opinion by Justice SUE LAGARDE (Retired).

In this State's appeal, we must decide whether the trial judge reversibly erred in granting appellee David Wayne Jones's motion to dismiss for failure to provide him a constitutional speedy trial. Applying the appropriate standards, we conclude the trial court reversibly erred. Accordingly, we reverse the trial court's order of dismissal with prejudice and remand this case to the trial court with instructions to reinstate the indictment.

### Factual & Procedural Background

In October 1999, the sexual assault offense alleged in this case was reported to the Dallas County District Attorney's Office (DA) by the complainant's mother. Appellee was not arrested pre-indictment, and the State conducted a two-year investigation before seeking an indictment. That investigation included a personal interview by an investigator from the DA's office with appellee at the Texas Department of Criminal Justice, Institutional Division (TDCJ–ID), where appellee was serving a sentence on another Dallas County sexual assault conviction.

On November 28, 2001, the Dallas County grand jury indicted appellee for the offense of aggravated sexual assault of a

---

1. The Honorable Sue Lagarde, Justice, Court of Appeals, Fifth District of Texas at Dallas, Retired, sitting by assignment.

child younger than fourteen years. *See* TEX. PEN.CODE ANN. § 22.021 (Vernon Supp.2004–05). The offense was alleged to have occurred on or about September 1, 1990. A "capias/warrant of arrest" was issued on the same date the indictment was returned against appellee and "came to hand" of the Dallas County Sheriff on November 30, 2001. At all relevant times, the State knew appellee was confined in the TDCJ–ID. "Right around ... the end of July," and "[c]ertainly no earlier than July 25th, 2003," appellee learned from his civil commitment lawyer of the indictment in this case. After learning of the indictment, appellee immediately contacted his mother and asked her to contact his attorney to bring him back to Dallas County to resolve the case. The Sheriff did not execute the arrest warrant until August 7, 2003, when appellee was brought from the TDCJ–ID and placed in the Dallas County Jail.

In September 2003, through his attorney, appellee filed a motion to dismiss, asserting the statute of limitations had run.[2] The court conducted a hearing on the motion and, on January 20, 2004, denied the motion. The case was set for trial on June 7, 2004. On May 26, 2004, appellee filed a second motion to dismiss, this time asserting as grounds a violation of his right to a speedy trial under both the federal and state constitutions. *See* U.S. CONST. AMEND. VI; TEX. CONST. art. 1, § 10.[3] Appellee alleged in the motion to dismiss that "[o]ver ten years have elapsed between the alleged conduct and indictment date. Over one year and eight months has

[sic] elapsed since the Defendant received notice of the indictment. Neither Defendant nor defense counsel has committed [any] act or omission contributing to these delays." Appellee further asserted he had been in the continuous custody of either the Dallas County Sheriff's Office or TDCJ–ID since June 11, 1991, and the allegations underlying the indictment were known to both the Dallas Police Department (DPD), the investigating agency which brought the original charges, and the DA's Office. Appellee further asserted the DPD was apprised of the existence of this charge in 1994 and that "Howard Blackmon of the Dallas County District Attorney's Office was appraised [sic] in 1999." Appellee alleged the DA's conduct was "too transparent to be anything but a bad faith attempt to violate the plea agreement and lengthen the Defendant's incarceration." Appellee further claimed his "loss of ability to defend ... occurred through the loss of witnesses, the dimming of witnesses' memories, and physical changes to the place of the alleged event."

On June 3, 2004, the court held a hearing on the motion to dismiss on speedy trial grounds. The trial judge heard testimony from the prosecutor, the court coordinator for the 195th Judicial District Court, and appellee, as well as arguments of both counsel. Insofar as appellee's assertion of bad faith by the prosecutor is concerned, the trial court stated on the record there was no evidence presented whatsoever of any nefarious plot by the DA's office.[4] However, the judge went on

---

**2.** Appellee also filed, and the trial court granted, a motion for nunc pro tunc concerning his back time in the case on which appellee had been incarcerated in TDCJ–ID.

**3.** The only claims preserved below and before us in this case are appellee's federal and state constitutional speedy trial claims; accordingly, no other issues are before us. *See West v.*

*State,* 121 S.W.3d 95, 114 (Tex.App.-Fort Worth 2003, pet. ref'd) (failure to object on ground of violation of constitutional right to due process waives that ground).

**4.** Nor has our independent review of the record revealed any.

to hold that the State's excuse of a heavy case load did not justify the failure to inform appellee of the indictment, and he stated his reasons in the record. The trial judge filed findings of fact[5] and conclusions of law.[6] Based on the evidence presented and his explicit fact findings, the trial court concluded the prosecutor's failure to notify appellee of the indictment and to provide him a speedy trial impaired appellee's ability to prepare a defense. Thus, the court concluded the only remedy was dismissal of the charge. The trial court dismissed appellee's case with prejudice. It is from this dismissal order the State appeals.

### Standard of Appellate Review

An appellate court is required to apply a bifurcated standard of review: an "abuse of discretion" standard to the trial court's factual findings and a de novo standard of review to the trial court's legal conclusions. *See State v. Munoz*, 991 S.W.2d 818, 821 (Tex.Crim.App.1999) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)) (appellate courts should afford almost total deference to a trial court's determination of the historical facts that are supported by the record); *Johnson v. State*, 954 S.W.2d 770, 771 (Tex.Crim.App.1997) (appellate courts conduct de novo review by independently weighing and balancing the four *Barker* factors[7]). Our review must be done in light of the arguments, information, and evidence that was available to the trial court at the time it ruled. *See Dragoo v. State*, 96 S.W.3d 308, 313 (Tex.Crim.App. 2003). We must uphold the trial court's ruling if it is supported by the record and is correct under the applicable law. *See Munoz*, 991 S.W.2d at 821.

We must defer to the trial judge's fact findings that are supported by the record. *See id.* The State has not challenged any of the fact findings on appeal. Essentially the facts are undisputed. We, therefore, review de novo and independently weigh and balance the *Barker* factors to determine the legal significance of the relevant facts to appellee's claim his speedy trial right was violated.

### Right to Speedy Trial

The Sixth Amendment to the United States Constitution provides, in relevant

---

5. The trial judge made the following findings of facts: the charged offense was alleged to have occurred on or about September 1, 1990; the offense was reported to the assistant district attorney by the alleged victim's mother in October 1999; the case was not filed by the district attorney's office until October 2001, more than two years after the crime was reported; an indictment was returned on November 28, 2001, but the appellee was not notified that the case had been filed or indicted; the prosecutor made no attempts to inform appellee of the indictment in this case nor did he attempt to learn whether appellee had been so informed; appellee learned of the indictment shortly before he was bench-warranted to the Dallas County Jail in August 2003, approximately 646 days (twenty-one months) after the indictment had been returned; the prosecutor's reasons for not timely filing the case, not timely seeking

an indictment, and not timely setting the case for trial were that he was busy with several high-profile capital murder cases and, because appellee was already incarcerated, the prosecutor felt there was no urgency in doing so.

6. Based on his written fact findings, the trial judge concluded as a matter of law that the prosecutor had a duty to inform appellee or his attorney that an indictment had been returned against him so that preparation of a defense could begin; the prosecutor's failure to notify appellee of the indictment and to provide him a speedy trial impaired appellee's ability to prepare a defense; and appellee's right to a speedy trial was violated under both the federal and state constitutions.

7. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

part, that "[i]n all criminal prosecutions, the *accused* shall enjoy the right to a speedy ... trial." U.S. CONST. AMEND. VI (emphasis added); *Barker v. Wingo*, 407 U.S. 514, 515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). This right was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. U.S. CONST. AMEND. XIV; *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

■ The Texas Constitution likewise provides that "[i]n all criminal prosecutions the *accused* shall have a speedy ... trial." TEX. CONST. art. 1, § 10 (emphasis added). The Texas Court of Criminal Appeals has traditionally analyzed state constitutional claims of the denial of a speedy trial under the factors established in *Barker*. *See Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim.App.2002). If an accused's speedy trial right is violated, the proper remedy is dismissal of the prosecution with prejudice. *Shaw v. State*, 117 S.W.3d 883, 888 (Tex. Crim.App.2003) (citing *Strunk v. United States*, 412 U.S. 434, 440, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973) and *Hull v. State*, 699 S.W.2d 220, 224 (Tex.Crim.App.1985)).

■ In determining whether one has been denied his federal or state right to a speedy trial, a court must use a balancing test to weigh the conduct of both the State and the defendant. *See id.* at 887 (citing *Barker*, 407 U.S. at 530, 92 S.Ct. 2182). The relevant factors to be weighed include, but are not necessarily limited to, the length of the delay, the reason for the delay, the defendant's assertion of his speedy trial right, and any prejudice to the defendant resulting from the delay. *Id.* at 888–89.

*Analysis*

Before we turn to our independent review, however, we summarize the relevant dates and time periods involved. The offense was alleged to have occurred on September 1, 1990. The DA's office became aware of the alleged offense in October 1999. Appellee was indicted on November 28, 2001. A capias/warrant of arrest was delivered to the Dallas County Sheriff's Office on November 30, 2001. Appellee's civil commitment attorney informed appellee of the indictment near the end of July 2003.[8] The arrest warrant was executed on August 7, 2003. In September 2003, appellee filed a motion to dismiss asserting limitations. The motion was denied following a January 2004 hearing, and the case was set for trial on June 7, 2004. On May 26, 2004, appellee filed a second motion to dismiss, asserting violation of his speedy trial rights under both the federal and state constitutions. On June 3, 2004, the judge held a hearing on the second motion to dismiss and signed a written order granting the motion. On June 9, 2004, the judge entered written findings of fact and conclusions of law.

■■ We turn now to our de novo review and independent weighing and balancing of the relevant *Barker* factors. In our review, we are mindful that under the plain language of both the federal and state constitutions, the speedy trial right applies only to an *accused*.

### A. Length of the Delay

■ The length of the delay is measured from the time the defendant is ar-

---

8. In its brief, the State says that appellee was not informed of the indictment until August 2003, and in appellee's motion to dismiss on speedy trial grounds, he states that he "was not given any notice of the pending indict-ment until his transfer from TDC to the Dallas County Jail in August of 2003." Appellee testified during the speedy trial hearing that he learned of the indictment no earlier than July 25, 2003.

rested or formally accused. *See United States v. Marion*, 404 U.S. 307, 313, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Unless the delay is "presumptively prejudicial," courts need not inquire into the other factors. *See Barker*, 407 U.S. at 530, 92 S.Ct. 2182. The State concedes the delay here was "presumptively prejudicial" and that it bears the responsibility for most of the delay. The State contends, however, that appellee contributed to approximately the last one-third of the delay by failing to timely demand a speedy trial once he learned of the indictment.

■■■■■ To trigger a speedy trial analysis, the accused must allege the interval between the accusation and the trial has crossed the threshold dividing ordinary and presumptively prejudicial delay. *Doggett v. United States*, 505 U.S. 647, 651–52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). As the State recognizes, generally a delay approaching one year is sufficient to trigger a speedy trial inquiry. *See Shaw*, 117 S.W.3d at 889. Once the accused makes this showing, one factor among several, the reviewing court must consider the extent to which the delay stretches beyond the bare minimum needed to trigger examination of the claim. *See Doggett*, 505 U.S. at 652, 112 S.Ct. 2686; *Zamorano*, 84 S.W.3d at 649. This latter inquiry is significant because "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. at 652, 112 S.Ct. 2686; *Zamorano*, 84 S.W.3d at 649.

In this case, there was an approximately thirty-month delay between the date of indictment and trial. Of that time, appellee stipulated that the nine months between the date he learned of the indictment and the date of trial should not count against the State.[9] The remaining twenty-one months are attributable to the State. We conclude this factor weighs against the State.

## B. Reasons for Delay

■■■■■ In assessing the "reason for the delay" factor, different weights must be assigned to different reasons. *See Barker*, 407 U.S. at 531, 92 S.Ct. 2182. Some reasons are valid and serve to justify the delay, while other reasons are not valid and do not serve to justify the delay. *See id.*

■■■■■ The trial court found that the prosecutor's reasons for *not timely filing the case, not timely seeking an indictment*, and not timely setting it for trial were that he was busy with several high-profile capital murder cases, and because the defendant was already incarcerated, the prosecutor believed there was no urgency in doing so. Because only an *accused* has a speedy trial right, we do not consider in our independent analysis any pre-indictment delay. *See United States v. MacDonald*, 456 U.S. 1, 7–10, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). We consider only the length of delay beginning from the date appellee was indicted. *See id.* at 7, 102 S.Ct. 1497.

Our review of the record suggests the prosecutor's "busy schedule" reasons did not address the failure of other law enforcement officials to timely serve appellee with a copy of the indictment and execute the warrant of arrest. Rather, the prosecutor's evidence addressed only pre-indictment delays that are *irrelevant* to a proper speedy trial analysis. The State presented no evidence to explain why the Dallas County Sheriff's Office waited almost two years to execute the "capias/warrant"

---

9. That time period is actually about ten months, not nine; however, that discrepancy does not affect our analysis. We consider appellee's stipulation to be a waiver of any complaint about that portion of the delay, and exclude it from our analysis.

when the State knew of appellee's location. Thus, the record leaves unexplained the delay from the date of the indictment until the warrant was executed.

 Even if a defendant's location is known, the State must exert due diligence in obtaining his presence for trial. *See Meshell v. State,* 739 S.W.2d 246, 250 (Tex.Crim.App.1987) (citing the former state statutory speedy trial act which it declared unconstitutional on separation of powers grounds); *Ex parte Hilliard,* 687 S.W.2d 316, 319 (Tex.Crim.App.1985). Indeed, if a prosecutor seeks the presence of a defendant by capias, he is "obliged by [his] own assigned responsibility to exercise due diligence to follow through in the endeavor to obtain the presence of an accused for trial." *Lyles v. State,* 653 S.W.2d 775, 780 (Tex.Crim.App.1983) (Clinton, J., concurring). And, unlike the former statutory speedy trial act which addressed prosecutorial delays only, the constitutional right to a speedy trial governs the entire criminal justice process. *See Chapman v. Evans,* 744 S.W.2d 133, 136 (Tex.Crim.App.1988). However, the primary burden is on the prosecution and the courts to insure that defendants are speedily brought to trial. *See id.* at 136–37 (citing *Turner v. State,* 504 S.W.2d 843, 845 (Tex.Crim.App.1974); *McKinney v. State,* 491 S.W.2d 404, 407 (Tex.Crim.App. 1973)). Both the trial court and prosecution are under a positive duty to prevent unreasonable delay. *Chapman,* 744 S.W.2d at 137 (citing *Wilson v. Bowman,* 381 S.W.2d 320, 321 (Tex.1964)). Consequently, the unexplained delay, even if by the Dallas County Sheriff's Office, is attributable to the State for the purpose of our speedy trial analysis, and we will consider it.

To the extent the State's "busy schedule" reasons go to the period of time from August 7, 2003, until the trial date of June 7, 2004, the State contends, and appellee so stipulated, that the nine-month delay after appellee learned of the indictment should not weigh against the State. Nevertheless, even excluding the delay attributable to appellee, we conclude this factor weighs against the State.

### C. Appellee's Assertion of His Speedy Trial Right

 Whether and how a defendant asserts his speedy trial right is closely related to the other three factors because the strength of his efforts will be shaped by them. *Zamorano,* 84 S.W.3d at 651 (citing *Barker,* 407 U.S. at 531, 92 S.Ct. 2182). Therefore, the defendant's assertion of his speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Id.* Although a defendant's failure to seek a speedy trial does not amount to a waiver of his right, failure to seek a speedy trial makes it difficult for a defendant to prevail on a speedy trial claim. *See Barker,* 407 U.S. at 531–32, 92 S.Ct. 2182. The longer the delay, the more likely it is that a defendant who really wanted a speedy trial would take some action to obtain one. *See id.* at 531, 92 S.Ct. 2182. Thus, a defendant's inaction weighs more heavily against a speedy trial violation the longer the delay becomes. *See id.* at 532, 92 S.Ct. 2182.

 In this case, appellee did not file a motion affirmatively requesting a speedy trial. Instead, he filed a motion to dismiss in which the only relief sought was dismissal of the indictment. This fact potentially weakens appellee's case, because "a dismissal instead of a speedy trial weakens [a speedy trial] claim because it shows a desire to have no trial instead of a speedy trial." *Zamorano,* 84 S.W.3d at 651 n. 40 (citing *Parkerson v. State,* 942 S.W.2d 789, 791 (Tex.App.-Fort Worth 1997, no pet.)).

The State argues appellee did not request a speedy trial immediately upon learning of the indictment but, instead, filed other motions in the interim between indictment and trial. Thus, the State contends, the nine-month delay between the time appellee learned of the indictment and trial is attributable to him. Appellee stipulated that the nine-month delay was not attributable to the State. Moreover, although appellee filed a motion to dismiss on limitations grounds, he never affirmatively raised a speedy trial claim until about two weeks before the trial date. We conclude this factor weighs against appellee.

### D. Prejudice to the Appellee Resulting from the Delay

■■■■ The final factor of "prejudice" must be assessed in light of the interests the speedy trial right was intended to protect. *See Barker,* 407 U.S. at 532, 92 S.Ct. 2182. Those interests are: (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility the defense will be impaired. *Id.* The third interest of limiting the impairment of the defense has been said to be the most serious. *See id.* Although a showing of actual prejudice is not required in Texas, the accused has the burden to make some showing of prejudice that was caused by the delay of his trial. *See Harris v. State,* 489 S.W.2d 303, 308 (Tex.Crim.App.1973) (citing *Courtney v. State,* 472 S.W.2d 151, 154 (Tex.Crim.App.1971)). Once the accused makes some showing of prejudice, the burden shifts to the State to show that no prejudice resulted. *Harlan v. State,* 975 S.W.2d 387, 390 (Tex.App.-Tyler 1998, pet. ref'd).

Here, appellee was neither incarcerated for this offense nor did he even know he had been indicted for this offense until approximately the beginning of August 2003. Therefore, the first two interests protected by the speedy trial right are not matters of concern in our analysis. Consequently, appellee's claimed prejudice necessarily turns on the possibility that his defense was impaired by the delay.

■■■■ Affirmative evidence of particularized prejudice is not essential to every speedy trial claim because excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or even identify. *See Doggett,* 505 U.S. at 655, 112 S.Ct. 2686. However, the presumption of prejudice to a defendant's ability to defend himself can be "extenuated ... by the defendant's acquiescence" in the delay. *See id.* at 658, 112 S.Ct. 2686.

Appellee testified at the hearing on his motion to dismiss on speedy trial grounds that his defense was impaired by the delay. In relevant part, appellee testified as follows:

[Defense Counsel]: Okay. Now after the time that you gave your deposition, which is in, what, '94 or '95?

[Appellee]: '94.

[Defense Counsel]: Okay. Did you focus or have anything to do or in any way think about the aspects of this case, other than attempting to get the back time credit you felt you were entitled to between the original plea and the subsequent plea in '93?

[Appellee]: No.

[Defense Counsel]: Okay. Were you focused on your therapy and treatment?

[Appellee]: Yes, sir.

[Defense Counsel]: Okay. Do you feel that your ability to defend yourself, in particular, your memory of certain witness's [sic] names, the lay out of the YMCA building itself, and certain physical aspects of the cases, has been dimmed by the passage of time?

[Appellee]: Yes.

[Defense Counsel]: Do you think that's harmed your ability to have effective representation and to defend yourself against this accusation?

[Appellee]: Yes, I do.

Thereafter, testimony was developed that in October 2001, before appellee was indicted, an investigator from the DA's office visited appellee at TDCJ–ID. When appellee was told he had a "legal visit," he expected to see his attorney. However, when appellee went to the visiting booth, the DA's investigator was present and said he was there to investigate a complaint against appellee. Appellee told the investigator he had an attorney and asked, "Where is my attorney Tom Pappas?" The investigator replied, "[O]h, Tom is your lawyer? I know Tom. I don't think he would mind me talking to you without him here." Based on that representation, appellee talked to the investigator without his attorney present.

Appellee also testified he had been in continuous custody at TDCJ–ID since 1993, had never done anything to avoid being arrested on this case, and, to his knowledge, no efforts had been made to obtain his appearance in this case. Appellee testified he had no pictures of the internal layout of the YMCA building but had learned that within the last year and a half the building had been "gutted" by its new owner. The following testimony was then elicited.

[Defense counsel]: Do you feel the fact that the, that you are no longer able to obtain pictures of the way the building looked back when you worked at the YMCA hampers or hinders your defense?

[Appellee]: Yes, I do.

[Defense Counsel]: Why?

[Appellee]: Because I've, I don't really recall a lot of things from back then, the people I worked with or the building layout.

\* \* \*

[Defense Counsel]: Okay. And was it your mind set and your belief in 2000 that, in fact, Lt. Walsh said in a newspaper article there was no evidence of any conduct other than fondling?

\* \* \*

[Defense Counsel]: Okay. Your answer was?

[Appellee]: Yes.

[Defense Counsel]: Okay. Did that just reinforce your belief that you put all of this out of your mind and put it behind you and went forward with therapy?

[Appellee]: Yes, I did.

\* \* \*

[Defense Counsel]: Okay. Be fair to say that in earlier October [sic] you and I discussed whether or not there were any new charges coming out of this case; is that correct?

[Appellee]: That's correct.

[Defense Counsel]: And based upon our discussion, you again, put it all, kept it all out of your mind because you had no belief that no new charges were being filed?

[Appellee]: Right.

On cross-examination, after the State established that the State's investigator had read appellee his *Miranda*[10] warnings, the following relevant exchange between the prosecutor and appellee occurred:

---

**10.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[Prosecutor]: Okay. Mr. Jones, did you, in fact, waive those rights and talk to Mr. McGowan at that time?

[Appellee]: I don't believe I was asked to waive the rights, but I did speak to him.

[Prosecutor]: All right. You never asked for an attorney to be present; is that correct?

[Appellee]: I asked him where is my attorney because I thought he would have brought him with him.

[Prosecutor]: Did you ask for him to be present prior to talking to Mr. McGowan?

[Appellee]: No.

The State then offered into evidence and, without objection, the trial court admitted the *Miranda* card bearing appellee's initials.

 Appellee claims he was prejudiced by the delay in two ways: it adversely affected his chance of parole and impaired his ability to present a defense. Appellee also claims the length of the delay was presumptively prejudicial. The State contends appellee's claims of prejudice are without merit.

We agree with the State that the record does not support appellee's claim of prejudice based on an adverse effect on his parole. No evidence was presented to show any nexus between the delay in bringing the case to trial and appellee's parole.

The State also contends appellee's failure to assert his speedy trial right until about two weeks before trial and the lack of specificity of prejudice undercut his assertion his defense was impaired. The State points out that appellee produced no evidence showing he, at any time during the delay, ever attempted to ascertain any witness's name, locate any witness, or even that he believed any witness would testify favorably to his defense. The State further contends the record contradicts appellee's claims his defense was impaired by showing that at least three of appellee's former supervisors were available to testify. The State further argues that appellee's claim about not remembering the layout of the YMCA building was irrelevant inasmuch as the offense was alleged to have occurred at White Rock Lake Park. The State also contends, even if appellee's defense was so impaired, nothing in the record indicates that the twenty-one-month-delay attributable to the State caused the impairment because appellee made no differentiation between pre- and post-indictment delay. The State further asserts appellee testified that, for therapy reasons, he intentionally put the alleged incident out of his mind in 1994, a full seven years before he was indicted; therefore, it is a reasonable inference that other memory-related issues also occurred *before* indictment. Finally, the State contends the twenty-one-month-delay attributable to the State was not long enough to be considered "presumptively prejudicial" and that appellee did not show any actual prejudice resulting from the post-indictment/pre-service delay.

As *Doggett* makes clear, excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or even identify. *See Doggett*, 505 U.S. at 655, 112 S.Ct. 2686. That presumption, however, can be "extenuated . . . by the defendant's acquiescence" in the delay. *See id.* at 658, 112 S.Ct. 2686. The trial judge concluded the State had a duty to inform appellee of the indictment and it did not do so until twenty-one months after appellee's indictment, a period of time described by the trial judge as a "very long time." The State presented no evidence to explain the twenty-one month-delay by the Sheriff's office in executing

the arrest warrant when appellee's location was known at all relevant times. Under the facts of this case, appellee could not possibly have acquiesced in the twenty-one-month-delay between indictment and service in a case he did not know existed. The only portion of the delay to which appellee could possibly have acquiesced is the period from late July or early August 2003 until the June 2004 trial date.

Appellee testified only generally that his memory of names, events, and the layout of his former workplace, a YMCA building, had faded with time. The credibility choice of whether to believe appellee's testimony that the passage of time and his therapy had impaired his memory was, of course, the trial judge's choice, as fact finder. Nevertheless, appellee's self-serving testimony alone does not amount to "some showing of prejudice." *See State v. Smith*, 76 S.W.3d 541, 552 (Tex.App.-Houston [14 Dist.] 2002, pet. ref'd). We conclude appellee has not presented evidence sufficient to constitute "some showing of prejudice."

▪ Nor do we conclude the twenty-one month delay is so excessive as to give rise to presumptive prejudice. *See Doggett*, 505 U.S. at 655, 112 S.Ct. 2686. The delay in this case is significantly shorter than the nearly five-year delay attributable to the State in *Barker*. *See Barker*, 407 U.S. at 533–34, 92 S.Ct. 2182. We may not, therefore, hold that the length of the delay alone amounts to presumptive prejudice. *See id.* at 534, 92 S.Ct. 2182.

Having reviewed the evidence, we conclude appellee did not meet his burden of showing "some prejudice," either actual or presumptive. We conclude this factor weighs against appellee.

### Conclusion

Giving deference to the trial court's findings on the relevant facts and balancing the *Barker* factors, we conclude the record does not support the trial court's ruling. We resolve the State's issue in its favor.

We reverse the trial court's June 3, 2004 order of dismissal with prejudice and remand this case to the trial court with instructions to reinstate the indictment.