Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-11-00638-CR
No. 04-11-00639-CR

The **STATE** of Texas,
Appellant

v.

Linda **BOOKER**,
Appellee

From the 216th Judicial District Court, Kendall County, Texas
Trial Court Nos. 4258 & 4259
Honorable Stephen B. Ables, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:      Karen Angelini, Justice
            Sandee Bryan Marion, Justice
            Phylis J. Speedlin, Justice

Delivered and Filed:   March 14, 2012

AFFIRMED

On March 1, 2004, appellee was charged by separate indictments for forgery and felony theft, and she was arrested in September 2007. On March 9, 2009, appellee filed a "Motion to Dismiss and/or Quash the Indictment" in both cases, which were consolidated. Following a July 25, 2011 hearing, the trial court granted appellee's motions. These appeals by the State followed.

**DISCUSSION**

In her motions to dismiss, appellee alleged law enforcement had failed to use due diligence in securing timely service of the indictments, despite the fact that both the complainant and law enforcement knew where she lived. To determine whether the State violated appellee's right to a speedy trial under the state or federal constitution, we weigh and balance four factors: (1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right; and (4) the prejudice to the accused. *See Barker v. Wingo*, 407 U.S. 514, 530 (creating balancing test for reviewing speedy trial claims under federal constitution); *Cantu v. State*, 253 S.W.3d 273, 280 n. 16 (Tex. Crim. App. 2008) (although speedy trial right under Texas Constitution exists independently of federal guarantee, claims of denial of State speedy trial right are analyzed under same four *Barker* factors); *see also State v. Jones*, 168 S.W.3d 339, 346 (Tex. App.—Dallas 2005, pet. ref'd) (applying *Barker* factors to motion to dismiss, rather than motion for speedy trial). Once the *Barker* test is triggered, we analyze the speedy trial claim by first weighing the strength of the *Barker* factors and then balancing their relative weights in light of the conduct of both the prosecution and the defendant. *Cantu*, 253 S.W.3d at 281. None of the *Barker* factors is a necessary or sufficient condition to finding a speedy trial violation. *Id.* Rather, the factors are related and should be evaluated in conjunction with any other relevant considerations. *Id.* In reviewing the trial court's ruling, we review the legal components de novo and review the factual components for an abuse of discretion. *See id.* at 282.

A.      **Length of Delay**

The length of the delay is the triggering mechanism for an analysis under *Barker*. *Barker*, 407 U.S. at 530. The length of the delay is measured from the time the defendant is arrested or formally accused. *See Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).

However, a delay between indictment and arrest may also be considered. *Doggett v. U.S.*, 505 U.S. 647, 652 (1992) ("extraordinary 8 1/2 year lag between Doggett's indictment and arrest clearly suffices to trigger the speedy trial enquiry"). Texas courts have generally held that a delay of eight months or more is "presumptively prejudicial" and will trigger a speedy trial analysis. *See Zamorano v. State*, 84 S.W.3d 643, 648-49 n. 26 (Tex. Crim. App. 2002) (if delay is not presumptively prejudicial, courts need not inquire into remaining three factors). Here, nearly three and one-half years elapsed between appellee's indictment and her arrest. Another almost four years elapsed between her arrest and the hearing on her motion to dismiss. This delay is sufficient to trigger a speedy trial analysis under *Barker*, and, because the almost three-year delay between indictment and arrest was caused solely by the State, we conclude this factor must weigh against the State and is presumptively prejudicial.

**B.      Reason for Delay**

Once it has been determined that a presumptively prejudicial delay has occurred, the State bears the initial burden of providing a justification for the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994); *State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App.—San Antonio 1998, no pet.). Different reasons for the delay are assigned different weights: an intentional delay for tactical reasons is weighed heavily against the State; a neutral reason, such as overcrowded courts, is weighed less heavily against the State; a valid reason is not weighed against the State at all; and delay attributable to the defendant may constitute a waiver of the speedy trial claim. *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999). Although a finding of "bad-faith delay" renders relief almost automatic, a finding of mere negligence will not become "automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced [her]." *Zamorano*, 84 S.W.3d at 649 (quoting *Doggett*, 505 U.S. at 656-57).

In this case, the State lays responsibility for the delay between indictment and arrest on law enforcement in Travis County, where appellee lived. At the hearing on appellee's motions, the State admitted it knew appellee resided in Austin, Travis County, by November 2004, following her March 2004 indictment. In November 2004, the State forwarded appellee's address to the Travis County Sheriff's Office and asked that office to arrest appellee. The State admitted it checked on the status of the arrest "whenever [the complainant] call[ed] to find out what her status was on not getting arrested . . . ." The State presented no evidence to explain the delay by the Sheriff's office in executing the arrest warrant when appellee's location was known at all relevant times. However, there is nothing in the record to indicate the delay between indictment and arrest was anything but negligence on the State's part.

The State, on appeal, does not attempt to excuse its negligence, except to argue that any delay past the three years (from September 2007 to July 2011, the date of the hearing on the motions to dismiss) was, in part, caused by appellee. The docket sheet indicates a November 1, 2007 pretrial hearing was reset to March 6, 2008. The State contends appellee requested this continuance, but the record on appeal does not support this contention. Trial was set to commence on April 7, 2008, but was reset to April 7, 2009. Nothing in the record indicates the reason for the continuance. Another pretrial hearing was set for July 25, 2011 and trial was reset to August 20, 2011. At the July 25, 2011 hearing, the trial court considered and granted appellee's motions to dismiss. At the hearing, appellee's counsel admitted he had been "as guilty as" the State in not pursuing trial.

There is nothing in the record to indicate the reasons for the delay between appellee's arrest and the hearing on her motions to dismiss. As for the delay between indictment and arrest, the reason the State gives for the delay is unacceptable. Therefore, we conclude that, on balance,

this factor weighs against the State. *See Jones*, 168 S.W.3d at 348 (holding "unexplained delay, even if by the Dallas County Sheriff's Office," attributable to the State).

**C.      Assertion of Right to Speedy Trial**

The third *Barker* factor requires a determination of whether appellee asserted her right to a speedy trial. *Barker*, 407 U.S. at 531; *Munoz*, 991 S.W.2d at 825 (both stating defendant must assert or demand her right to speedy trial). Whether and how a defendant asserts her speedy trial right is closely related to the other three factors because the strength of her efforts will be shaped by them. *Zamorano*, 84 S.W.3d at 651 (citing *Barker*, 407 U.S. at 531). Therefore, the defendant's assertion of her speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *Id.* Although a defendant's failure to seek a speedy trial does not amount to a waiver of her right, failure to seek a speedy trial makes it difficult for a defendant to prevail on a speedy trial claim. *See Barker*, 407 U.S. at 531-32. The longer the delay, the more likely it is that a defendant who really wanted a speedy trial would take some action to obtain one. *See id.* at 531. Thus, a defendant's inaction weighs more heavily against a speedy trial violation the longer the delay becomes. *See id.* at 532.

In this case, appellee stated she was not aware of the indictments until after her arrest. She was arrested in September 2007, but she waited almost one and one-half years before filing her motions to dismiss. In her motions, she did not affirmatively request a speedy trial. Instead, the only relief appellee sought was dismissal of the indictments. "This fact potentially weakens appellee's case, because 'a dismissal instead of a speedy trial weakens [a speedy trial] claim because it shows a desire to have no trial instead of a speedy trial.'" *Jones*, 168 S.W.3d at 348 (citing to *Zamorano*, 84 S.W.3d at 651 n. 40). We conclude that because appellee waited almost one and one-half years before filing her motions to dismiss and because she did not affirmatively

request a speedy trial in her motions, but instead sought to avoid trial all together, this factor weighs against appellee.

## D.    Prejudice

The fourth factor is prejudice to the defendant, which should be assessed in light of defendant's interests. *Barker*, 407 U.S. at 532; *Munoz*, 991 S.W.2d at 826. These interests are (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Munoz*, 991 S.W.2d at 826. Of these interests, the most important is protecting a defendant's ability to adequately prepare her case because compromise of this interest "skews the fairness of the entire system." *Munoz*, 991 S.W.2d at 826 (quoting *Barker*, 407 U.S. at 532). Appellee claims this last type of prejudice, and there is probably no other kind that she can claim, as she was not subjected to pretrial detention and she has not claimed anxiety or concern.

The defendant has the burden to make some showing of prejudice, although a showing of actual prejudice is not required. *Id.* When the defendant makes a prima facie showing of prejudice, the burden shifts to the State to show that the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Id.* (quoting *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)). However, consideration of prejudice is not limited to the specifically demonstrable, and affirmative proof of particularized prejudice is not essential to every speedy trial claim. *Doggett*, 505 U.S. at 655. The *Barker* court explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown." *Barker*, 407 U.S. at 532. Thus, we generally must recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for

that matter, identify. *Doggett*, 505 U.S. at 655. While such presumptive prejudice cannot alone carry a speedy trial claim without regard to the other *Barker* criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay. *Id.*

The basis of appellee's indictment and arrest is that she stole money from her employer from January 2002 through October 2003 and she passed to a bank a forged check payable to her employer. Her employer ran a company that transported musicians and vendors and payment for services was frequently in cash. In April 2004—before appellee knew about the indictments— her former employer came to visit her and he told her he did not intend to pursue any case against her. Appellee thought he was involved in another lawsuit and needed her testimony to help him. When appellee got another job in April 2004, she began to make restitution payments to her former employer. Appellee said she kept the sheriff's department apprised of her location at all times, even before her arrest.

Appellee testified that in 2002 and 2003 she was aware of witnesses and vendors. But she admitted that both then and in 2011, she could not discover the names and addresses of specific witnesses who could testify about her employer's course of conduct in dealing in cash. Appellee then stated she probably could remember names. On cross-examination, when asked how these witnesses would have assisted in her defense, appellee responded she did not think they would.

Also at the hearing, defense counsel testified that after appellee was arrested in 2007, he began to try to locate the names and addresses of bus drivers, bands, businesses, and people that dealt with appellee's employer in an attempt to establish whether her employer was an accomplice or had set up a scheme to perhaps defraud the IRS by dealing exclusively in cash. Counsel said he could only locate one individual who dealt with appellee's employer and this

individual told him "back in that period [2004] he would have known the names of the vendors and bus drivers and the people [the employer] dealt with. But due to the time period, he had no records and had no way of identifying them."

Under an abuse of discretion standard applicable to factual issues, we defer to the trial court's resolution of disputed facts and to the trial court's right to draw reasonable inferences from those facts. *Prihoda v. State*, 352 S.W.3d 796, 804 (Tex. App.—San Antonio 2011, pet. ref'd). We also defer to the trial court's assessment of a witness's credibility. Here, the trial court apparently believed appellee's defense was impaired by the delay. And, the State offered no evidence to meet its burden of showing appellee suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Munoz*, 991 S.W.2d at 826. Therefore, we conclude this factor weighs in favor of appellee.

## D.     Balancing the *Barker* Factors

The presumptively prejudicial delay due to the State's own negligence and no acceptable reason for the delay between indictment and arrest weigh against the State. Although, appellee did not affirmatively request a speedy trial, she presented evidence sufficient to constitute a prima facie showing of prejudice. Balancing these factors, we must conclude the trial court did not abuse its discretion in granting appellee's motions to dismiss.

## CONCLUSION

We overrule the State's issue on appeal and affirm the trial court's orders of dismissal.

Sandee Bryan Marion, Justice

Do not publish