**AFFIRM; and Opinion Filed August 9, 2013.**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-12-00861-CR

**SAMIR GUPTA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 4**
**Collin County, Texas**
**Trial Court Cause No. 004-81157-2010**

## OPINION

Before Justices O'Neill, Francis, and Fillmore
Opinion by Justice Fillmore

A jury convicted Samir Gupta of driving while intoxicated (DWI), and the trial court assessed punishment at ninety days in jail, suspended for fifteen months, and an $800 fine. In one issue, Gupta complains the trial court erred by denying his requests that the case be dismissed due to a violation of his right to a speedy trial. We affirm the trial court's judgment.

## Background

On November 20, 2009, Gupta and his wife were involved in an argument in the parking lot of a liquor store. When the police arrived at approximately 11:30 p.m., Gupta was sitting in the driver's seat of his car and had blood on his nose, hand, and clothes. Gupta's wife was arrested for assault, and Gupta was asked to perform several field sobriety tests. After Gupta complained of chest pains, he was transported to the hospital by ambulance. At the hospital, a

police officer requested that Gupta consent to have a sample of his blood drawn. Gupta refused, and the police officer left. The officer returned approximately two hours later and told Gupta that she was charging him with DWI. She also said that he would receive notice in the mail within a few weeks stating when he should come to court. The officer did not arrest Gupta, and he remained in the hospital until the next morning.

On February 10, 2010, the State filed an information charging Gupta with DWI. On February 18, 2010, a "Capias for Unapprehended Defendant" was issued for Gupta's arrest.

Gupta and his wife both checked the mail regularly but, according to Gupta, from November 2009 until he moved in July 2010, he did not receive notice of the charges. Gupta notified the post office of his change in address and had his mail forwarded to his new address. However, according to Gupta, he did not receive notice of the charges at his new address. In March 2011, Gupta contacted an attorney because he wanted to know the status of the charges. Gupta's attorney learned a warrant had been issued for Gupta's arrest and, on April 12, 2011, Gupta "turned himself in."

Gupta's first appearance in court was set for June 3, 2011. That day, Gupta filed a motion to dismiss due to a violation of his right to a speedy trial. The trial court heard the motion on June 23, 2011. The only two witnesses at the hearing were Gupta and Brandi Norton-Roberson.

Gupta testified that, due to the passage of time, he only vaguely remembered the incident that led to his arrest. Gupta testified he could not recall how he got hit, but knows he had a concussion. Gupta also testified he did not tell the police officer that he had consumed four or five drinks. He did not recall telling the police officer that he purchased alcohol or being requested to recite a portion of the alphabet or count down a series of numbers. However, he did recall being taken in an ambulance to the hospital where he received a number of medical tests.

Gupta also recalled the police officer asking if he would give a blood sample and his refusal to do so. He recalled the police officer returning to the hospital and telling him that he was being charged with DWI and that he would receive notice in the mail stating when to appear in court. Gupta did not recall the police officer reading him the statutory warnings relating to his refusal to give a blood sample, but recalled that he was not arrested in the hospital.

Gupta also testified that he saw a former neighbor named "Joseph" walking his dog on the night of November 20, 2009. He believed this former neighbor could testify about his condition that evening. Gupta did not know Joseph's last name or exact address and believed he had no ability to locate Joseph based on the limited information available. Finally, Gupta testified the liquor store had a surveillance camera. However, because the store did not keep the recordings from the camera for more than thirty days, he could not obtain the recording from November 20, 2009. According to Gupta, he had been inside the store for "five minutes or so," and the recording could have shown whether he was intoxicated. The State stipulated that the video recording taken from the police officer's car was also missing.

Norton-Roberson testified that she works in the county clerk's office. When the county clerk receives a case from the district attorney and the defendant has not been arrested, a warrant is issued and the file is put in "unapprehended" status until the defendant either turns himself in or is arrested. Once the warrant is no longer active, the clerk gives the file to the clerk of the court to issue a first appearance.

The trial court denied Gupta's motion to dismiss. On July 5, 2011, Gupta filed a demand for a speedy trial, and the case was set for trial on September 12, 2011. On September 8, 2011, Gupta filed an amended motion to dismiss due to a speedy trial violation. Gupta attached to the amended motion an affidavit from Dr. Joseph Bolin stating he was Gupta's neighbor on November 20, 2009. Bolin indicated that Gupta's attorney had contacted him on August 18,

2011 and asked if he could recall seeing Gupta on November 20, 2009. Bolin stated in the affidavit that he could not "remember with any specificity" because it was "just too long ago."

On September 9, 2011, the trial court continued the trial to October 24, 2011 and set a hearing on the amended motion to dismiss for October 20, 2011. At the hearing on the amended motion, Bolin testified that Gupta and his wife lived next door to Bolin for approximately eighteen months. Bolin usually walked his dog between 9:00 and 10:00 p.m. Gupta worked late hours and, every two to three days while walking his dog, Bolin would see Gupta arriving home from work. Because it had been almost two years, Bolin could not remember whether he saw Gupta on November 20, 2009. According to Bolin, he might have recalled whether he had seen Gupta on November 20, 2009 if he had been asked "within a week or two." He could not remember, however, who he saw two months ago.

Gupta again testified about when the incident occurred, when he learned charges were filed, and when he surrendered to the authorities. Gupta was not aware of any delays in trying the case that he had requested. However, he was aware that he filed the amended motion to dismiss prior to the September trial setting.

Gupta again testified the video recordings from the police car and the liquor store were missing. The parties stipulated the district attorney requested the video recording from the police car on February 25, 2010 and that the recording had been lost at that time. Gupta then testified he had been unable to obtain the video recording from the liquor store because the recordings were kept for only thirty days. The trial court denied the amended motion to dismiss. Gupta immediately requested a continuance of the October 24, 2010 trial setting because the hospital laboratory had not responded to his subpoena for documents.

The trial court granted the continuance, and the case was set for trial on December 12, 2011. The record does not reflect why the case did not go to trial on December 12, but trial

–4–

commenced on February 13, 2012. On February 14, 2012, the jury found Gupta guilty of DWI. The trial court assessed punishment, in accordance with a plea agreement, of ninety days in jail, suspended for fifteen months, and an $800 fine.

On February 21, 2012, Gupta filed a motion for new trial asserting the verdict was contrary to the law and the evidence and that the trial court should grant a new trial in the interest of justice. Gupta filed a memorandum in support of his motion for new trial again asserting a violation of his right to a speedy trial. At the hearing on the motion for new trial, Gupta's trial counsel testified the amended motion to dismiss was not intended to delay the trial of the case. Rather, the trial was continued because the trial court set another hearing after the amended motion was filed. Gupta testified that, because he was allowed to leave the hospital, he did not think that charges would be filed against him.

The trial court denied the motion for new trial. As relevant to this appeal, the trial court made findings of fact that (1) Gupta was not incarcerated during the pendency of his trial; (2) Bolin testified that if called one month after the offense, he would not have remembered his interaction with Gupta on the night of the offense; (3) Gupta contended the video recording from the liquor store could have been obtained if he had been arrested closer to the offense date and could have shown he was not intoxicated inside the store; and (4) Gupta suffered no anxiety or concern regarding a pending criminal charge. The trial court concluded (1) Gupta was not unduly prejudiced by the delay of his arrest because the evidence he sought to obtain would not have changed the outcome of his trial, he sought a dismissal of the charges rather than asserting his right to a speedy trial, and he did not give cogent reasons for his failure to assert his right to speedy trial prior to seeking a dismissal of the charges, and (2) Gupta's right to a speedy trial was not violated.

**Speedy Trial**

In one issue, Gupta asserts his right to a speedy trial was violated and, therefore, the trial court erred by failing to dismiss the case.

*Standard of Review*

We review the trial court's ruling on a speedy trial claim under a bifurcated standard of review. *Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008). We apply an abuse of discretion standard to the trial court's findings of fact, but a de novo standard to the trial court's legal conclusions. *Id.* Under the abuse of discretion standard, we view all of the evidence in the light most favorable to the trial court's ultimate ruling. *Id.* We defer not only to a trial court's resolution of disputed facts, but also to its right to draw reasonable inferences from those facts. *Id.* The trial court may completely disregard a witness's testimony, based on credibility and demeanor evaluations, even if that testimony is uncontroverted. *Id.* The trial court may also disbelieve any evidence so long as there is a reasonable and articulable basis for doing so. *Id.*

*Applicable Law*

The Sixth Amendment to the United States Constitution and article one, section ten, of the Texas Constitution guarantee an accused the right to a speedy trial. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10; *Cantu*, 253 S.W.3d at 280 & n.16. Whether raised under the federal or state constitution, we analyze speedy trial claims on an ad hoc basis by weighing and then balancing four factors: (1) length of the delay; (2) reason for the delay; (3) assertion of the right; and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). No single factor is necessary or sufficient to establish a violation. *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003); *see also Ex parte Perez*, 398 S.W.3d 206, 217 (Tex. Crim. App. 2013). Rather, courts must "engage in a difficult and sensitive balancing process" that takes into account the parties' overall conduct.

*Zamorano*, 84 S.W.3d at 648; *see also Ex parte Perez*, 398 S.W.3d at 217. The factors are related, and we apply them "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Cantu*, 253 S.W.3d at 281. Review of the individual factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question. *Id.* at 282.

While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice. *Id.* at 280. However, the defendant's burden of proving a speedy-trial violation varies inversely with the State's degree of culpability and the length of the delay. *Ex parte Perez*, 398 S.W.3d at 217 (citing *Cantu*, 253 S.W.3d at 280). "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Cantu*, 253 S.W.3d at 280–81.

<u>Length of Delay</u>

The length of delay is the triggering mechanism for an analysis of the remaining three *Barker* factors and is measured from the date the defendant is arrested or formally accused. *Barker*, 407 U.S. at 530; *Cantu*, 253 S.W.3d at 280; *see also Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (test is triggered by delay that is "presumptively prejudicial"). Depending on the nature of the charges, a post-accusation delay of about one year is presumptively prejudicial for purposes of the length-of-delay factor. *Doggett*, 505 U.S. at 652 n.1; *see also Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). Here, Gupta was formally charged with DWI on February 10, 2010. He filed his motion to dismiss based on a speedy trial violation on June 3, 2011. The State concedes the sixteen-month delay is sufficient to trigger a speedy trial inquiry.

Once the defendant has crossed the threshold of showing a presumptively prejudicial delay, we must consider the length of the delay beyond the triggering point because "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Zamorano*, 84 S.W.3d at 649 (quoting *Doggett*, 505 U.S. at 652); *see also Shaw*, 117 S.W.3d at 889 (time period that stretches well beyond bare minimum needed to trigger examination of speedy trial claim weighs heavily against State). Here, although this factor weighs in favor of Gupta, we note that the delay did not greatly exceed the minimum period needed to trigger an examination of Gupta's speedy trial claim.

Reason for Delay

Once it is determined that a presumptively prejudicial delay has occurred, the State bears the burden of justifying the delay. *Cantu*, 253 S.W.3d at 280–81. When assigning weight to the reasons for delay given by the State, different reasons deserve different weights. *Barker*, 407 U.S. at 531; *Shaw*, 117 S.W.3d at 889. Intentional prosecutorial delay is weighed heavily against the State, while more "neutral" reasons, such as negligence or overcrowded dockets, are weighed less heavily against it. *Zamorano*, 84 S.W.3d at 649 (quoting *Barker*, 407 U.S. at 531). "In the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Dragoo*, 96 S.W.3d at 314.

The State concedes it was negligent in failing to serve the warrant on Gupta. Gupta argues the State was "indifferent," a more "unacceptable" reason for the delay than negligence. Regardless of whether the State was negligent or indifferent, the delay in serving the warrant is attributable to the State. *See State v. Jones*, 168 S.W.3d 339, 347–48 (Tex. App.—Dallas 2005, pet. ref'd). However, there is no evidence of deliberate conduct by the State to delay the trial. Accordingly, although this factor weighs in favor of finding a speedy trial violation, it does not

do so heavily. *See Dragoo*, 96 S.W.3d at 314; *Barringer v. State*, 399 S.W.3d 593, 600 (Tex. App.—Eastland 2013, no pet.).

Assertion of Right

Although it is the State's duty to bring the defendant to trial, "a defendant does have the responsibility to assert his right to a speedy trial." *Cantu*, 253 S.W.3d at 282. When a defendant is unaware of the charge or the warrant, we consider whether and how the defendant asserted his speedy trial right once he became aware. *See Doggett*, 505 U.S. at 653–54; *Barringer*, 399 S.W.3d at 601; *see also Cantu*, 253 S.W.3d at 282–83 ("Whether and how a defendant asserts this right is closely related to the other three factors because the strength of his efforts will be shaped by them."). The "defendant's assertion of his speedy-trial right (or his failure to assert it) is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Cantu*, 253 S.W.3d at 283.

A request that the trial court dismiss the charges based on a speedy trial violation, rather than a request for a prompt trial setting, weakens the strength of a speedy trial claim because it indicates a "desire to have no trial instead of a speedy one." *Id.* "If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure." *Id.* "Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id.*

Without making a demand for a speedy trial, Gupta filed a motion to dismiss on the day of his first appearance. After the trial court denied the motion, Gupta filed a demand for a speedy trial and received a trial setting. Four days before trial was scheduled to begin, Gupta filed an amended motion for speedy trial, attaching Bolin's affidavit. Gupta's counsel testified at the motion for new trial hearing that he did not intend to delay the trial by filing the amended

–9–

motion. However, Gupta's counsel did not explain how the trial court could rule on the amended motion relying on new evidence from Bolin without Bolin testifying and being subject to cross-examination. After the amended motion was denied and the case was set for trial, Gupta immediately sought a continuance of the new trial setting. Finally, after he was convicted, Gupta again requested, through his motion for new trial, that the charge against him be dismissed based on a speedy trial violation.

The record reflects that, rather than a speedy trial, Gupta wanted no trial. Accordingly, this factor weighs against Gupta. *See id.* at 283–84; *Prihoda v. State*, 352 S.W.3d 796, 805 (Tex. App.—San Antonio 2011, pet. ref'd) (filing of motion to dismiss three years after arrest and on the day trial was to commence weighed heavily against defendant).

Prejudice

We assess any possible prejudice to the defendant in light of the defendant's interests that the speedy trial right was designed to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize the accused's anxiety and concern; and (3) to limit the possibility that the accused's defense will be impaired. *Barker*, 407 U.S. at 532; *Cantu*, 253 S.W.3d at 280. Of these factors, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532; *see also Cantu*, 253 S.W.3d at 285; *Dragoo*, 96 S.W.3d at 315. Although the defendant need not show actual prejudice, he has the burden to show that some prejudice was caused by the delay. *State v. Munoz*, 991 S.W.2d 818, 826 (Tex. Crim. App. 1999); *Jones*, 168 S.W.3d at 349 (citing *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973)). The burden then shifts to the State to show the defendant did not suffer serious prejudice beyond that which would normally result from ordinary delay. *Munoz*, 991 S.W.2d at 826.

The possibility of oppressive pretrial incarceration is not involved in this case because Gupta was not in jail pending trial. Further, Gupta has not claimed he suffered any anxiety or concern due to the delay. Accordingly, the first two interests protected by the right to a speedy trial are not factors in our analysis. *See Jones*, 168 S.W.3d at 349. Therefore, we consider only whether Gupta's defense was prejudiced due to the delay. The trial court concluded Gupta was not unduly prejudiced by the delay because he failed to show the evidence sought would have impacted the outcome of this case.

Gupta first contends his defense was impaired due his inability to locate witnesses. To make a showing of some prejudice due to missing witnesses, a defendant is required to show the witnesses were unavailable, their testimony might be material and relevant to the case, and that he has exercised due diligence in attempting to locate the witnesses and produce them for trial. *Phipps v. State*, 630 SW.2d 942, 946–47 (Tex. Crim. App. [Panel Op.] 1982); *see also Ex parte Perez*, 398 S.W.3d at 212 n.7 (to establish particularized prejudice due to a missing witness, defendant is required to show more than the fact the State's delay caused witnesses to be missing; rather, defendant must also show the materiality of the missing testimony and establish how the absence of such testimony would impact his defense). In this case, the only missing witness specifically identified by Gupta at the initial hearing on the motion to dismiss was "Joseph," a former neighbor who Gupta believed had seen him on November 20, 2009. According to Gupta, he had no possibility of locating Joseph based on the available information. However, Gupta offered no evidence that he attempted to locate Joseph before filing the motion to dismiss. *See Phipps*, 630 S.W.2d at 947.

Prior to the September 12, 2011 trial setting, Gupta filed an amended motion to dismiss with an affidavit from Bolin. At the hearing on the amended motion to dismiss, Bolin testified that, when Gupta lived next door to him, he would see Gupta every two or three days between

–11–

9:00 and 10:00 p.m. Even if Bolin had seen Gupta on the evening of November 20, 2009, Gupta failed to establish how Bolin's observations of Gupta's condition between 9:00 and 10:00 p.m. was relevant to whether Gupta was intoxicated hours later. Further, Bolin testified that, within a matter of weeks of November 20, 2009, he would not have been able to recall if he had seen Gupta on that day. Accordingly, even if Bolin's testimony was material and relevant to the case, Gupta failed to establish that evidence was lost due to the State's delay.

Gupta next asserts he was prejudiced by the delay because his recollection of the events on November 20, 2009 was vague due to the passage of time. Gupta specifically argues that his inability to remember either statements he made to the police or cognitive ability tests he performed impaired his ability to cross-examine the State's witnesses. However, Gupta's recollection of a number of events on the night of November 20, 2009 was clear, possibly throwing doubt on his claimed inability to recall other events. Further, he testified he suffered a concussion that evening, providing an alternative explanation for his memory loss. It was the trial court's role to resolve issues relating to Gupta's credibility as to the events he testified he could not recall and why he could not recall them. We must defer to that determination. *See Jones*, 163 S.W.3d at 352 (trial court, as fact finder, makes credibility choice as to defendant's testimony about impaired memory). We conclude the trial court could have reasonably found that Gupta was not prejudiced by his failure to recall some of the events of November 20, 2009. *See Munoz*, 991 S.W.2d at 829 (defendant must show "lapses of memory" are in some way "significant to the outcome" of case); *Jones*, 168 S.W.3d at 352 (defendant's "self-serving testimony" about impaired memory does not establish "some showing of prejudice").

Gupta finally contends he was prejudiced by his inability to obtain the video recordings from the police car and the liquor store. However, Gupta did not attempt to obtain either of these recordings before June 2011. The video recording from the liquor store was kept for only thirty

–12–

days following November 20, 2009.  Further, the parties stipulated that the video recording from the police car was lost by February 25, 2010.  Therefore, the delay by the State in serving the warrant was not the cause of the loss of this evidence.

On this record, we cannot conclude Gupta established more than minimal prejudice from the delay.  *See Munoz*, 991 S.W.2d at 829.  Accordingly, this factor weighs in favor of the State.  *See Prihoda*, 352 S.W.3d at 805.

<u>Balancing the Four Factors</u>

When we balance the *Barker* factors, we conclude they weigh against finding a violation of Gupta's right to a speedy trial.  The approximately sixteen-month delay in this case and the reason for the delay weigh slightly in favor of finding a violation.  However, these factors are outweighed by the two remaining factors.  Gupta's conduct indicated that, rather than a speedy trial, he wanted no trial at all.  Further, he failed to establish prejudice from the delay.  Having reviewed the four factors, we conclude the trial court did not err by denying Gupta's requests the case be dismissed due to a speedy trial violation.

We resolve Gupta's sole issue against him and affirm the trial court's judgment.


/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47


120861F.U05

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

SAMIR GUPTA, Appellant

No. 05-12-00861-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
No. 4, Collin County, Texas,
Trial Court Cause No. 004-81157-2010.
Opinion delivered by Justice Fillmore,
Justices O'Neill and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 9th day of August, 2013.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE